NO. 12-15705
Consolidated with NOS. 12-15889, 12-15957, 12-15996, 12-16010, 12-16038

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re ONLINE DVD RENTAL ANTITRUST LITIGATION,
ANDREA RESNICK; BRYAN EASTMAN; AMY LATHAM; MELANIE
MISCIOSCIA; STAN MAGEE; MICHAEL OROZCO; LISA SIVEK;
MICHAEL WIENER,
*Plaintiffs-Appellees,*

THEODORE H. FRANK,
*Objector-Appellant,*

v.

NETFLIX, INC.; WAL-MART STORES, INC.; WALMART.COM USA LLC,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California, No. 4:09-md-2029 PJH

Opening Brief
of Appellant Theodore H. Frank

CENTER FOR CLASS ACTION FAIRNESS LLC
Theodore H. Frank
1718 M Street NW, No. 236
Washington, D.C. 20036
(703) 203-3848
*In pro per*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

Statement of Subject Matter and Appellate Jurisdiction................................. 1

Statement of the Issues............................................................................................ 1

Statutes and Rules.................................................................................................... 3

Statement of the Case ............................................................................................. 4

Statement of the Facts ............................................................................................ 6

      A.     The Lawsuit and Settlement Agreement. ................................. 6

      B.     Theodore H. Frank's Objections and the Fairness Hearing. .................... 8

Summary of the Argument.................................................................................. 10

Preliminary Statement ......................................................................................... 12

Argument.................................................................................................................. 13

I.     The District Court Erred by Failing to Apply the Class Action Fairness Act to this Coupon Settlement........................................................................... 13

      A.     The "Gift Cards" Provided under the Settlement Agreement Are Coupons under the Class Action Fairness Act......................................... 14

      B.     The District Court Failed to Apply the Limitations on Attorneys' Fees Required by the Class Action Fairness Act. ................................................ 21

      C.     The District Court Failure to Apply Heightened Scrutiny in Evaluating the Settlement May Also Require Remand.................................................. 24

II.    The District Court's Award of $8.5 Million to the Attorneys When the Class Actually Received Only $5.2 Million in Cash and Coupons of Unknown Redemption Value Was an Abuse of Discretion. ................................. 25

      A.     Class Counsel's Award Is Based on an Improperly Inflated Calculation of the Benefit to the Class. ............................................................................ 26

      B.     The District Court Offered No Justification for an Attorney-Fee Award That Exceeded the Pecuniary Class Recovery. ........................................... 32

CONCLUSION ......................................................................................................... 35

STATEMENT OF RELATED CASES  PURSUANT TO NINTH CIRCUIT RULE 28-2.6 ...................................................................................................... 37

CERTIFICATE OF COMPLIANCE   WITH FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1 ....................................................................................... 38

PROOF OF SERVICE ....................................................................................... 39

# TABLE OF AUTHORITIES

Cases

*Alcazar v. Corp. of the Catholic Archbishop of Seattle,*
    627 F.3d 1288 (9th Cir. 2010) .......................................................................14-15

*Bachman v. A.G. Edwards,*
    344 S.W.3d 260 (Mo. Ct. App. 2011) .................................................... 20

*Bush v. Cheaptickets,*
    425 F.3d 683 (9th Cir. 2005) ..............................................................2

*Casey v. Albertson's Inc.,*
    362 F.3d 1254 (9th Cir. 2004) ............................................................ 2

*Clement v. Am. Honda Fin. Corp.,*
    176 F.R.D 15 (D. Conn. 1997) ........................................................... 16

*Dennis v. Kellogg Co.,*
    -- F.3d --,
    2012 U.S. App. LEXIS 14385 (9th Cir. July 13, 2012)............ 11-12, 30-32, 34-35

*Devlin v. Scardelletti,*
    536 U.S. 1 (2002) ..............................................................................1

*Ferrington v. McAfee, Inc.,*
    No. 10-CV-01455-LHK,
    2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) ..................................... 23

*Figueroa v. Sharper Image Corp.,*
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) .................................................. 13

*Fleury v. Richemont N. Am., Inc.,*
    No. C-05-4525 EMC,
    2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) .................................................. 15, 19

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................. 32

*In re Aqua Dots Prod. Liab. Litig.,*
    654 F.3d 748 (7th Cir. 2011) ...........................................................................26-27

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) .................................... 2, 12, 23, 25-26, 32-34

*In re Cendant Corp. Litig.,*
    243 F.3d 722 (3d Cir. 2001) ........................................................................ 28

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ........................................................................ 32

*In re HP Inkjet Printer Litig.,*
    No. 5:05–cv-3580 JF,
    2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) ....................................... 20

*In re Imax Sec. Litig.,*
    No. 06 Civ. 6128 (NRB),
    2012 U.S. Dist. LEXIS 86513 (S.D.N.Y. Jun. 20, 2012) ...............................30-31

*In re Mex. Money Transfer Litig.,*
    267 F.3d 743 (7th Cir. 2001) ............................................................ 13, 16-17

*In re Safeguard Self-Storage Trust,*
    2 F.3d 967 (9th Cir. 1993) .......................................................................... 14

*In re Wells Fargo Sec. Litig.,*
    157 F.R.D. 467 (N.D. Cal. 1994) ..........................................................28, 30

*Khatib v. County of Orange,*
    639 F.3d 898 (9th Cir. 2011) ..................................................................... 14

*Koon v. United States,*
    518 U.S. 81 (1996) ...................................................................................... 24

*Moody v. Sears Roebuck & Co.,*
    664 S.E.2d 569 (N.C. App. 2008) .............................................................. 21

*Nachshin v. AOL,*
    663 F.3d 1034 (9th Cir. 2011) .............................................................. 12, 24

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) ............................................................... 2, 34

*Radosti v. Envision EMI, LLC,*
  760 F. Supp. 2d 73 (D.D.C. 2011) ......................................................... 16

*Riordan v. State Farm Mut. Auto. Ins.,*
  589 F.3d 999 (9th Cir. 2009) ................................................................... 3

*Six Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ............................................................... 32

*Sobel v. Hertz Corp.,*
  No. 3:06-cv-00545-LRH,
  2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ................... 20, 24

*Swedish Hosp. Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993) ................................................................ 28

*Synfuel Technologies v. DHL Express (USA),*
  463 F.3d 646 (7th Cir. 2006) ........................................ 1, 10, 13-16, 20, 24

*Trombley v. Bank of Am. Corp.,*
  No. 08-cv-456-JD,
  2012 U.S. Dist. LEXIS 63072 (D.R.I. May 3, 2012) ........................... 23

*True v. Am. Honda Motor Co.,*
  749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...................................... 15, 17, 20

*Union Fidelity Life Ins. Co. v. McCurdy,*
  781 So.2d 186 (Ala. 2000) ............................................................... 21-22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ............................................................. 28, 30

*Walter v. Hughes Communs., Inc.,*
  No. 09-2136 SC,
  2011 U.S. Dist. LEXIS 72290 (N.D. Cal. July 6, 2011) ...................... 19

*Wilson v. DirectBuy, Inc.,*
  No. 3:09-CV-590,
  2011 U.S. Dist. LEXIS 51874 (D. Conn. May 16, 2011) ................... 20

*Zimmerman v. Oregon Dep't. of Justice,*
  170 F.3d 1169 (9th Cir. 1999) ............................................................. 16

<u>Rules and Statutes</u>

15 U.S.C. § 1 ....................................................................................1

15 U.S.C. § 2 ....................................................................................1

15 U.S.C. § 15 ...........................................................................1, 4, 6

15 U.S.C. § 26 ...........................................................................1, 4, 6

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

28 U.S.C. § 1337 ..............................................................................1

28 U.S.C. § 1711 note § 2(a)(3) ......................................3, 13, 19, 21

28 U.S.C. § 1712(a) ................................1-3, 8, 10, 14, 16-17, 21, 23-24

CAL. BUS. & PROF. CODE § 17701.5 (Deering 2012) ..................... 20

Fed. R. App. Proc. 4(a)(1)(A) ...........................................................1

Fed. R. Civ. Proc. 23(h) ....................................................... 2, 4, 25-26

Fed. R. Civ. Proc. 54(b) ...................................................................1


<u>Other Authorities</u>

109 S. Rpt. 14 (2005) ................................................................... 19

AMERICAN LAW INSTITUTE,
     PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.13 *comment a* (2010) ........ 23

Brunet, Edward, *Class Action Objectors: Extortionist Free Riders or Fairness
     Guarantors*, 2003 U. CHI. LEGAL F. 403.................................... 13

Dickerson, Thomas A., CLASS ACTIONS: THE LAW OF 50 STATES § 9.03[1]
     (2005) .................................................................................... 23

Feeley, Jeff & Myron Levin, *Ford Accord Garners Less Than 1 Percent Participation*,
Bloomberg (July 7, 2009) ...................................................................... 22

Frankel, Allison, *Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny
and Grant & Eisenhofer to Modify Apple Securities Class Action Deal*,
American Lawyer Lit. Daily (November 30, 2010) ............................................... 12

Jeffrey S. Jacobson, *Defining 'Coupon' Under the Class Action Fairness Act*,
PRODUCT LIAB. LAW 360 (Jan. 15, 2008) ............................................................ 15

Jones, Ashby, *A Litigator Fights Class-Action Suits*,
Wall St. J. (Oct. 31, 2011) .......................................................................... 12

Karlsgodt, Paul & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or
Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12,
2011) .......................................................................................................... 12-13

Leslie, Christopher R., *A Market-Based Approach to Coupon Settlements in Antitrust
and Consumer Class Action Litigation*, 49 U.C.L.A. L. REV. 991 (2002) ................. 22

Miller, Geoffrey P. & Lori S. Singer, *Nonpecuniary Class Action Settlements*,
60 L. & CON-TEMP. PROBS. 97 (1997) ........................................................... 14, 18

Raghubir, Priya, *Coupons in context: discounting prices or decreasing profits?*,
JOURNAL OF RETAILING 80 (2004) ...................................................................... 22

Tharin, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*,
18 GEO. J. LEGAL ETHICS 1443 (2005) ............................................................... 21

## Statement of Subject Matter and Appellate Jurisdiction

The district court had subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 15 U.S.C. § 15 because the amended consolidated class action complaint alleged violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1-2, and Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15, 26.

The court's final judgment, pursuant to Fed. R. Civ. Proc. 54(b), issued on March 29, 2012. ER1-19.[1] Objector Theodore H. Frank, the appellant in this case, filed a notice of appeal on March 30, 2012. ER41-43. This notice is timely under Fed. R. App. Proc. 4(a)(1)(A).

This court has appellate jurisdiction because this is a timely-filed appeal from a final judgment under 28 U.S.C. § 1291. Frank, as a class member and objector, has standing to appeal a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti,* 536 U.S. 1 (2002).

## Statement of the Issues

1.      The Class Action Fairness Act (CAFA) requires a district court to review a coupon settlement with "heightened judicial scrutiny," *Synfuel Technologies v. DHL Express (USA),* 463 F.3d 646, 654 (7th Cir. 2006), and to limit the attorneys' fee award in a coupon settlement based "on the value to class members of the coupons that are

---

[1] "ER" refers to Frank's Excerpts of Record. "Dkt." refers to the docket in this case.

redeemed," 28 U.S.C. § 1712(a). Did the district court err as a matter of law when it refused to apply Class Action Fairness Act scrutiny and fee limitations on coupon settlements because the settling parties called the coupons offered in this settlement "gift cards"?

**Standard of Review:** Questions of statutory interpretation are reviewed *de novo. Bush v. Cheaptickets*, 425 F.3d 683, 686 (9th Cir. 2005) ("construction, interpretation, or applicability" of CAFA is reviewed *de novo*).

2.      The benchmark for a reasonable award in the Ninth Circuit in a case alleging economic injury is 25% of the "benefit to the class." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Did the district court abuse its discretion when it awarded class counsel more than a third of the common fund going to the class without making the findings required by Ninth Circuit precedent before exceeding the 25% "percentage of the fund" benchmark?

**Standard of Review:** The district court's decision to award attorneys' fees is reviewed for abuse of discretion. *Bluetooth*, 654 F.3d at 940. A district court must specify its reasons for approving a particular attorneys' fee award, so that the appellate court may conduct meaningful review. *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000). A failure to apply the correct law is an abuse of discretion. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

3.      When calculating "benefit to the class" for the purpose of calculating attorneys' fees under Fed. R. Civ. Proc. 23(h), is a settlement that spends $4.5 million in administrative costs and pays $14 million to class members equivalent to a

settlement that spends $0.5 million in administrative costs and pays $18 million to the class, or should administrative costs be discounted or excluded in calculating "benefit to the class" because class members are not indifferent to whether money goes to settlement administrators or class members?

**Standard of Review:** Interpretation of the federal rules of civil procedure is a question of law reviewed *de novo. Riordan v. State Farm Mut. Auto. Ins.*, 589 F.3d 999, 1004 (9th Cir. 2009).

## Statutes and Rules

**28 U.S.C. § 1711 note.**

…

§ 2(a) Findings. Congress finds the following: …

(3) Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where—

(A) counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value;

(B) unjustified awards are made to certain plaintiffs at the expense of other class members; and

(C) confusing notices are published that prevent class members from being able to fully understand and effectively exercise their rights.

**28 U.S.C. § 1712.**

**(a)    Contingent Fees in Coupon Settlements.** If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

**Federal Rule of Civil Procedure 23. Class Actions.**

**(h)     Attorney's Fees and Nontaxable Costs.**

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply: …

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a). …

## Statement of the Case

Plaintiffs' amended consolidated class action complaint sued Wal-Mart Stores, Inc., and Walmart.com, USA LLC (collectively Walmart) and Netflix over an alleged illegal market allocation agreement to create a monopoly in the online DVD rental market. Dkt. No. 22. In December 2010, plaintiffs and Walmart reached a settlement and filed a motion for preliminary approval. Dkt. No. 278. Shortly thereafter, the court granted the plaintiffs' pending certification motion against remaining defendant Netflix for a litigation class of Netflix subscribers. Dkt. No. 287. The court denied without prejudice plaintiffs' motion for approval of the December 2010 settlement agreement on March 11, 2011. Dkt. No. 348.

On July 1, 2011, plaintiffs entered a subsequent settlement agreement with Walmart. ER264-310. The Settlement defined the class as "[a]ny person or entity residing in the United States or Puerto Rico that paid a subscription fee to rent DVDs

online from Netflix on or after May 19, 2005, up to and including the date the Court grants Preliminary Approval of the Settlement." ER270-71.

The court entered a preliminary approval order and a conditional class certification order on September 2, 2011. Dkt. No. 492. Class member Theodore H. Frank, *inter alia*, objected. ER229-60. After a final fairness hearing on March 14, 2012 (ER44-142), the district court entered a final judgment on March 29, 2012 approving the Settlement and ordered a payment of $8.5 million to the plaintiffs' attorneys that same day. ER1-19; ER20-22. Frank filed his notice of appeal on March 30, 2012. ER41-43. Five other objectors subsequently filed notices of appeal, and this Court consolidated those appeals with Frank's appeal on May 8, 2012. Dkt. No. 633.

Meanwhile, on November 22, 2011, the district court granted Netflix's motion for summary judgment, holding that the market allocation agreement was not illegal and did not cause plaintiffs to pay higher prices as a result of the agreement. Dkt. No. 542. Final judgment in favor of defendant Netflix was issued on November 3, 2011. Dkt. No. 547. That judgment is currently on appeal. *Resnick v. Netflix, Inc.*, No. 11-18034 (9th Cir.). A collateral appeal (12-16160) and cross-appeal (12-16183) by the plaintiffs and Netflix over the calculation of costs are also pending, but are of no moment to the appeals by objectors in this case.

## Statement of the Facts

### A.   The Lawsuit and Settlement Agreement.

Plaintiffs' amended consolidated class action complaint alleged that Netflix and Walmart had entered into an illegal market allocation agreement to create a monopoly in the online DVD rental market. Dkt. No. 22. The complaint sought treble damages under Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15, costs and attorneys' fees, as well as injunctive relief under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26. *Id.* Plaintiffs claimed that the monopoly agreement between Netflix and Walmart eliminated all competition between Walmart.com and Netflix in the online DVD rental market, injuring a class of Netflix subscribers through higher subscription prices to Netflix. *Id.*

On July 1, 2011, plaintiffs entered a settlement agreement with Walmart. ER264-310. The Settlement defined the class as "[a]ny person or entity residing in the United States or Puerto Rico that paid a subscription fee to rent DVDs online from Netflix on or after May 19, 2005, up to and including the date the Court grants Preliminary Approval of the Settlement." ER270-71.

Pursuant to the Settlement, the class members could choose between a coupon, termed a Wal-Mart "gift card," or cash (of equal amount). ER265-66; ER272-73. The coupon is only "redeemable for purchase at Walmart.com," which is Walmart's online store. ER265. Though the plaintiffs characterized the coupon as "fully transferable" in their briefing to the district court (ER262), the coupon cannot be redeemed for cash and can only be sold by licensed resellers. ER265-66; ER108. The coupons are subject

to Walmart.com's Gift Card Terms and Conditions (ER265-66), but the Settlement Agreement did not describe such conditions. ER264-310.

Under the Settlement Agreement, a class member could submit a claim for a gift card via e-mail, website, or regular mail. ER275. The only means to submit a claim for cash, however, was via regular mail. *Id.* A class member requesting cash was required to disclose her Social Security number in the mailed claim. *Id.* Claims were *per capita*: every class member's claim would be a *pro rata* share of the remaining settlement fund after deductions for attorneys' fees, representative incentive payments, and administration expenses. ER271-73. Thus, a class member who had subscribed to Netflix for one DVD for one month during the class period would receive the same benefit as a class member who had subscribed to Netflix for six DVDs for six years, even though the latter class member would have paid more than 400 times as much to Netflix during the class period.

The court entered a preliminary approval order and a conditional class certification order on September 2, 2011. Dkt. No. 492. Email notice was disseminated on November 15, 2011 to approximately 35 million class members. Dkt No. 548. Class members submitted approximately 742,000 coupon claims and 431,000 cash claims. ER147-48.

The settlement agreement provides for a "settlement amount" of $27.2 million. ER271. After attorneys' fees ($6,812,500), litigation expenses ($1.7 million), $45,000 in class representative incentive payments, and administration costs ($4.5 million), there was only $14,142,000 remaining to be paid to the class—approximately $12 per

claimant. ER21-22; ER148; ER164. This computes to $5.2 million in cash claims (431,000 claims multiplied by $12) and $8.9 million in gift card claims (742,000 clams multiplied by $12). ER147-48; ER164. The $8.9 million gift card relief is based on the total number of gift card claims and does not reflect the number of gift cards redeemed or actually used; the district court received no evidence regarding the actual redemption of the gift cards. ER56-57; ER243-44.

Netflix was not a party to the settlement agreement. ER264. On November 22, 2011, the district court granted Netflix's motion for summary judgment holding that the market allocation agreement was not illegal and did not cause plaintiffs to pay higher prices as a result of the agreement. Dkt. No. 542.

## B. Theodore H. Frank's Objections and the Fairness Hearing.

Class member Theodore H. Frank has been a paying member of Netflix at his Arlington, Virginia home address since March 20, 2009, and is thus a member of the class. ER236. Frank objected that the settlement was a coupon settlement that required heightened judicial scrutiny and fee limitations under the Class Action Fairness Act. ER239-44. Frank further objected that the requested payment to the attorneys was improperly based on an inflated settlement fund that did not consider the number of gift cards redeemed, 28 U.S.C. § 1712(a), and wrongly paid the attorneys a commission on the notice and administration costs at the expense of the class. ER244-250. Based on the inflated settlement value, the requested fee award exceeded the Ninth Circuit's 25% benchmark. ER251-53.

At the fairness hearing, the district court approved the settlement. ER30-31. The court held that the gift cards were not coupons (ER23) and treated the settlement as a "cash settlement." ER24. The court received no evidence and made no findings regarding the redemption of the gift cards. ER56-57; ER243-44.

The district court also granted at the hearing class counsel's request for a fee award that was 25% of the $27.2 million settlement fund. ER28-30. The $27.2 million settlement fund included $8.9 million in coupon claims for which there was no evidence of redemption. ER56-57; ER243-44. The court rejected Frank's objection that the $4.5 million notice and administration costs should be excluded from the settlement fund. ER29. The court's attorney-fee order awarded $8.5 million to plaintiffs' attorneys ($6.8 million in fees and $1.7 million in litigation expenses), but the litigation expenses were excluded from the numerator in the court's calculation of the 25% recovery ($6.8/$27.2 settlement fund). ER21-22. When the $4.5 million in administration costs are excluded from the settlement fund, when the settlement fund includes the known value of *redeemed* gift cards ($0), and when litigation expenses are included in the numerator, the $8.5 million award to class counsel is 62% of the class recovery ($8.5/$13.7 million settlement fund). Even if one were to assume that 100% of the coupons would be redeemed for the full amount of the $8.9 million face value, the total value to the class is only $22.6 million, of which the attorneys would receive over 37%. Although class counsel's award significantly exceeds 25% of the class recovery, (ER251-53), the court's decision provides no explanation for departure from this Circuit's 25% benchmark. ER21-22; ER28-31.

## Summary of the Argument

The settling parties and the district court have disregarded the Class Action Fairness Act (CAFA) and this Circuit's precedents for calculating awards to attorneys. The settling parties have crafted a quintessential coupon settlement while managing to escape the limitations CAFA places on coupon settlements. How did they do it? They simply named the coupons "gift cards." Regardless of how the offered relief is termed, however, the gift card is a typical coupon: it provides a discount on a future purchase with defendant Walmart. While the settling parties may employ whatever nomenclature they prefer, the settlement's terminology cannot transform the offered coupon relief into cash. But that is precisely what the district court permitted.

The district court treated the settlement as a cash settlement and did not apply the heightened judicial scrutiny CAFA requires for coupon settlements. This is wrong, whether one views the relief as coupons or even merely similar to coupons. *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). The district court awarded fees based on the face value of the coupons instead of awarding the attorneys' fees "based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a). The district court's refusal to classify the relief as coupon relief had no statutory or legal basis and was an error of law. CAFA would have no meaning if settling parties could avoid its requirements with a thesaurus.

The district court's failure to value the class recovery based on redeemed coupons was not the district court's only error in awarding attorneys' fees. The court's fee order purported to award class counsel 25% of the settlement fund. The

settlement fund, however, was grossly inflated because in addition to using the value of *issued* rather than *redeemed* coupons, the settlement fund included $4.5 million in notice and administration costs. Inclusion of administration costs in a settlement fund is poor public policy because class counsel is receiving a commission on payments to third parties; because it assumes that class members are indifferent whether settlement money goes to third parties or to class members; and because it fails to give the proper incentives to class counsel to ensure the settlement is administered efficiently to maximize relief to class members.

More important, the settlement here reflects how inclusion of administration costs in the settlement fund leads to distorted results. Because there was no evidence of the redemption of the gift cards, the only actual relief to the class was $5.2 million in cash. Class counsel cannot justify its award of $8.5 million unless they use the administrative costs to wrongly inflate the value of recovery.

The district court's use of the inflated value of recovery means that the court *actually* awarded class counsel 62% of the class recovery ($8.5/$13.7 million actual settlement fund). The benchmark for a reasonable award in the Ninth Circuit in a case alleging economic injury is 25% of the class benefit. *Dennis v. Kellogg Co.*, -- F.3d --, 2012 U.S. App. LEXIS 14385 at *21 (9th Cir. July 13, 2012). The court's failure to provide an explanation for an award that was twice this Circuit's benchmark was an abuse of discretion requiring remand.

Even if one accepted the district court's calculation of the "benefit to the class" to include millions of dollars that was never paid to the class, the district court by its

own terms awarded more than 25% of the "benefit." The district court calculated the class benefit to be $27.2 million, but awarded the attorneys $8.5 million ($6.8 million in fees and $1.7 million in expenses). But under Ninth Circuit law, one includes the total attorney award—both fees and expenses—when calculating the fee percentage. *Dennis*, 2012 U.S. App. LEXIS 14385 at *6 ("$2 million in fees and costs"), *26. Even utilizing the exaggerated $27.2 million figure for class benefit, the class counsel award is over 31%, and thus still too high without explanation for departure from the benchmark.

## Preliminary Statement

Appellant Frank is an attorney and the founder of the non-profit Center for Class Action Fairness LLC. Attorneys affiliated with the Center litigate on behalf of class members against unfair class-action procedures and settlements, and have won millions of dollars for class members. *See, e.g.,* Ashby Jones, *A Litigator Fights Class-Action Suits*, Wall St. J. (Oct. 31, 2011); Allison Frankel, *Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal*, American Lawyer Lit. Daily (November 30, 2010). Frank wishes to draw a distinction between himself and "professional objectors" that file bad-faith objections to extort class counsel. Though he has represented multiple objectors (including those who successfully appealed in *Bluetooth* and *Nachshin v. AOL*, 663 F.3d 1034 (9th Cir. 2011)), Frank is not a "professional objector." A "professional objector" is a specific legal term referring to a for-profit attorney who files objections to blackmail plaintiffs' attorneys for payment in exchange for withdrawing his or her objections. Paul

Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) (distinguishing the Center from professional objectors); Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL FORUM 403, 437 n.150 (public interest groups are not "professional objectors"). Neither the Center nor Frank has ever agreed to a *quid pro quo* payment to withdraw an appeal of an objection. This objection is brought in good faith to overturn an unfair settlement, and to create precedent deterring future plaintiffs and defendants from agreeing to abusive settlements designed to benefit attorneys at the expense of consumers.

## Argument

### I. The District Court Erred by Failing to Apply the Class Action Fairness Act to this Coupon Settlement.

Low-value settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" were a central legislative motivation of the Class Action Fairness Act. 28 U.S.C. § 1711 note § 2(a)(3)(A). Coupon settlements suffer from several flaws, including that "they often do not provide meaningful compensation to class members." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007); *see also In re Mex. Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). Coupon settlements are disfavored because they often fail to disgorge illegal profits and instead force future business with the defendant. *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). Because of the inherent dangers of coupon settlements, CAFA requires a

district court to apply "heightened judicial scrutiny," *id.* at 654, and to limit the attorneys' fee award based "on the value to class members of the coupons that are redeemed," 28 U.S.C. § 1712(a).

Settling parties use coupons to inflate the apparent value of the proposed settlement by claiming the coupons' nominal value is the actual value to the class members. *See* Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 L. & CONTEMP. PROBS. 97, 108 (1997). Settling parties thus have every incentive to craft a coupon settlement disguised as a cash settlement: class counsel receives a fee award based on an inflated settlement value; defendants minimize their own expenses, and both escape CAFA's scrutiny. Here, the settling parties sought to avoid coupon settlement scrutiny by naming their coupons "gift cards." The district court erred by treating the coupons as cash and not applying the scrutiny and fee limitations required by CAFA. ER239-44.

## A. The "Gift Cards" Provided under the Settlement Agreement Are Coupons under the Class Action Fairness Act.

If it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck. *In re Safeguard Self-Storage Trust*, 2 F.3d 967, 970-74 (9th Cir. 1993). While the settling parties termed the offer to class members a "gift card," the legal effect of the relief "is a question of function, not just labeling." *Khatib v. County of Orange*, 639 F.3d 898, 905 (9th Cir. 2011) (finding that courthouse holding facility fell within definition of "jail" under RLUIPA). Parties cannot rely on labeling "as a mere 'subterfuge' to avoid statutory obligations." *Alcazar v. Corp. of the Catholic Archbishop of Seattle*, 627 F.3d

1288, 1292 (9th Cir. 2010). Here, the gift card must be used on Walmart.com to reduce the price of an order. ER265. As a "discount on a proposed purchase," it is thus typical coupon relief. *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006).

Simply put, the gift card relief is indistinguishable from a coupon because it provides a benefit to class members only when used to discount a new purchase from defendant Walmart. *Id.*; *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (settlement providing "rebates" was a coupon settlement because it consists of "a discount on another product or service offered by the defendant in the lawsuit" (quoting *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008))); Jeffrey S. Jacobson, *Defining 'Coupon' Under the Class Action Fairness Act*, PRODUCT LIAB. LAW 360 (Jan. 15, 2008) ("If class members can receive nothing more than the ability to buy a new product from the defendant at a discounted price, that is clearly a 'coupon settlement.'"). Regardless of how the settling parties dub the offered relief, this is a coupon settlement to which the limitations of CAFA apply.

Below, the district court refused to treat the gift cards as coupons under CAFA because although they had "shared characteristics," the gift cards had "no expiration date" and could be given (but not sold) "from one party to another." ER23. This is wrong for two reasons. *First*, whether the gift card fits exactly into the district court's perceived definition of coupon (the court did not define coupon or explain against what the gift card was being compared) is irrelevant. Even if settlement relief is not

"identical to a coupon," it should be treated like a coupon when it is "in-kind compensation" that "shares characteristics" with coupons. *Synfuel*, 463 F.3d at 654.[2]

*Second*, the district court's distinctions are flawed. The duration of a coupon may be relevant in assessing its fair value. *See, e.g., Clement v. Am. Honda Fin. Corp.*, 176 F.R.D 15, 31 (D. Conn. 1997) (finding coupon worthless in part because class members would have to "finance or lease a car in the next two years"). But whether a coupon expires in one year or seven years does not make it any less of a coupon. *See, e.g., Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 76 (D.D.C. 2011) (analyzing coupon settlement offering seven-year voucher). If a coupon has no expiration date, that just means that it will have a higher redemption rate in the long run. This might mean that the settlement is more fair than a settlement involving coupons with an expiration date, but it does not mean that the settlement is not a coupon settlement. Moreover, 28 U.S.C. § 1712(a) already rewards class counsel for negotiating settlements where the coupons are more likely to be redeemed—the higher redemption rate means that class counsel has a stronger case for fees. But the higher redemption rate means that the coupons should be valued at that higher redemption rate, not at 100%. Further, the district court's distinction regarding transferring the gift cards to another party is wrong because coupons too may be transferred. *See, e.g., In re Mex. Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (noting that

---

[2] Judge Wood's persuasive decision in *Synfuel* is well-reasoned and should be adopted by the Ninth Circuit because there is no basis to reject it; this Court will only create a circuit split upon "painstaking inquiry." *Zimmerman v. Oregon Dep't. of Justice*, 170 F. 3d 1169, 1184 (9th Cir. 1999).

transferability of coupons affects their value). As a matter of law, nothing in CAFA creates an exception for coupons with no expiration date or coupons that can be given to another party.

The district court also reasoned that the gift cards were not coupons under CAFA because of "the ability of the class members to choose whether or not they wanted cash or a gift card." ER24. Distinguishing the gift cards from coupons based on an option to class members is a *non sequitur*. Whether the gift card is a coupon is independent of other types of relief offered to the class. *See True*, 749 F. Supp. 2d at 1069 n.20 (rejecting argument that proposed settlement was not a "coupon settlement" since "other relief" was involved); *cf.* 28 U.S.C. § 1712(a) (if proposed settlement includes both coupons and other relief, fee restrictions for coupon settlements apply to portion of the recovery of the coupons). The district court's interpretation improperly excises § 1712(a) from the statute.

The district court's proposed rule leads to absurd results. Imagine a settlement in the hypothetical class action *Homer Simpson v. The Frying Dutchman Restaurant* where the defendant offers class members a choice between a single penny or a $5 coupon for an octopus appetizer. The availability of the cash option does not mean the coupon is not a coupon. Otherwise every settling party could avoid CAFA's limitations by adding an option for class members to spend 45 cents in postage to receive a penny, and the resulting settlement would be indistinguishable from a pure coupon settlement.

Moreover, the settlement here was structured to deter class members from requesting cash instead of a coupon. A class member who requests a coupon could submit a claim via e-mail, website, or regular mail; but, curiously, a class member who requests cash could *only* submit a claim by printing the claims form and submitting it via regular mail (at their own expense), and the mailed claim for cash must include the claimant's Social Security number. ER275; ER312-13; ER317. The Settlement Agreement rationalizes that the cumbersome cash request is used "to minimize fraud risks" (ER275), but neither the agreement nor the settling parties explain why coupon requests—if they purportedly have the same value as the cash claim—do not require the same level of security. "If too many conditions are placed on the cash-out option, the transaction costs of the option will make it too costly to be worth exercising." Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 L. & CON-TEMP. PROBS. 97, 108 (1997). Exercising the cash option here was more cumbersome (class members could only make claims via regular mail) and intrusive (class members had to decide whether a gift card of some unknown amount was worth the risk of identity theft inherent in releasing one's Social Security number). In fact, a claimant risked *losing* money by opting for cash because it was entirely possible that with 35 million class members (Dkt. No. 548), the $14.1 million available for claimants (after payments to attorneys and settlement administrators swallowed up nearly half the settlement fund) could have resulted in a check that failed to cover the printing and postage costs used to file the claim form.

Indeed, one cannot overlook the incongruity of a class of *online DVD* subscribers—who, by definition, have Internet access—required to use *postal mail* for the cash claims process. *Cf. Walter v. Hughes Communs., Inc.*, No. 09-2136 SC, 2011 U.S. Dist. LEXIS 72290, *40–41 (N.D. Cal. July 6, 2011) (rejecting a settlement with a postal-mail-only claims process because "[f]or unknown reasons, the parties have opted for an unnecessarily taxing claims procedure over [online] alternatives"). The only reason for a claims process requiring postage and the U.S. mail in a form to receive cash is to ensure that the defendant *would not* pay a high percentage of the potential cash claims.

Allowing the settlement to escape coupon analysis would eviscerate the Class Action Fairness Act. If settling parties could instantly transform a coupon settlement into a cash settlement by semantics (or by adding a cumbersome cash relief alternative to a coupon settlement), then it would completely undo CAFA's attempt to protect the class from the abuses of coupon settlements. And such a reading is contrary to the intent of Congress. *E.g., Fleury*, 2008 WL 3287154, at *2 ("legislative history, however, suggests that even such a noncash benefit [like a credit] could be a coupon" (citing 109 S. Rpt. 14 (2005))). Class members would be stripped of CAFA's protection from exploitative coupon settlements "leaving class members with coupons or other awards of little or no value." 28 U.S.C. § 1711 note § 2(a)(3) (emphasis added).

It is of no consequence that the term "gift card" is defined or regulated by state and federal law. *See, e.g.,* Credit Card Accountability Responsibility and Disclosure Act of 2009. As an initial matter, the gift cards in this case are *not* regulated by statute. The

settling parties made clear that the gift cards "are not covered by the state statute" because "the rights of these holders are the rights defined in the settlement agreement." ER109; ER265-66. Accordingly, the gift cards in this case must be evaluated by the definition given to them under the proposed settlement.

More important, whether or not an instrument is governed by a regulatory scheme does not preclude it from being a coupon under CAFA. For example, "rebates" are regulated by state law (*see, e.g.*, CAL. BUS. & PROF. CODE § 17701.5 (Deering 2012)), but are also coupons under CAFA. *See, e.g.*, *True*, 749 F. Supp. 2d at 1069. Indeed, relief takes a variety of nominal forms in coupon settlements. *See, e.g.*, *Bachman v. A.G. Edwards*, 344 S.W.3d 260 (Mo. Ct. App. 2011) ("vouchers"); *In re HP Inkjet Litig.,* 5:05-cv-3580, 2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) ("e-credits"), *appeal pending* No. 11-16097 (9th Cir.); *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ("certificates"); *Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590, 2011 U.S. Dist. LEXIS 51874 (D. Conn. May 16, 2011) ("continued or renewed [service] membership"). This is because CAFA is not seeking to regulate semantics. Instead, it is protecting class members from worthless settlements that fall under the umbrella of coupon relief. Thus a form of relief can be a gift card species while still being in the coupon genus subject to CAFA.

Because the gift cards under the class settlement agreement are coupons—or, at a minimum, "in-kind compensation" that "shares characteristics" with coupons, *Synfuel*, 463 F.3d at 654—the district court erred in not treating the proposed settlement as a coupon settlement under CAFA.

**B.      The District Court Failed to Apply the Limitations on Attorneys' Fees Required by the Class Action Fairness Act.**

The law requires that attorneys' fees "shall be based on the value to class members of the coupons that are *redeemed*" rather than the number of coupons issued. 28 U.S.C. § 1712(a). But the district court treated the gift cards as cash and did not consider the redemption rate in ruling on attorneys' fees. This is a violation of the plain language of the statute and requires remand.

Below, the district court awarded $8.5 million to the attorneys based on class counsel's argument that the fee award was 25% of the $27.2 million "settlement fund." Dkt. No. 564. The $27.2 million settlement fund, however, included $8.9 million in purported coupon relief. *See* ER147-48; ER164 (742,821 gift card claims multiplied by $12). In basing the fee award on $8.9 million in *issued* gift cards, the district court essentially applied a 100% redemption rate to the gift cards.

The district court's failure to consider the number of gift cards redeemed is particularly egregious here because redemption rates of coupons without a secondary market (like the gift cards) typically range from 1 to 3%. *See, e.g.*, James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 Geo. J. Legal Ethics 1443, 1445 (2005). Indeed, coupon redemption rates are famously low, *see* 28 U.S.C. § 1711, note § 2(a)(3)(A), and cases abound in which few class members redeem their coupons. *See, e.g., Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 572, 574 (N.C. App. 2008) (317 valid claims filed out of 1,500,000 member class, for total of $2,402 in total redemption of coupons as compared to more than $1,000,000 in attorneys' fees and costs); *Union Fidelity Life Ins. Co. v. McCurdy*, 781 So.2d 186, 188 (Ala. 2000) (113

redemptions out of 104,000 member class); Jeff Feeley & Myron Levin, *Ford Accord Garners Less Than 1 Percent Participation*, Bloomberg (July 7, 2009) (75 coupons redeemed out of class of 1 million, while class attorneys received $25 million in fees and costs). While one can expect a somewhat higher redemption rate here in that only class members who filed claims get coupons, it still follows that the district court's valuation may well be ten to ninety times greater than the redeemed value of the coupons.

The court's error of failing to consider the redemption rate is underscored by the coupon's low face value. Coupons with lower face values are less likely to be redeemed. *See* Priya Raghubir, *Coupons in context: discounting prices or decreasing profits?*, JOURNAL OF RETAILING 80 (2004). Below, the district court effectively acknowledged that the underlying coupons have little value: "$12 [is] not a lot of money these days even at Wal-Mart." ER115. The coupon's low face value would likely have negatively affected the redemption rate.

Further, coupons often include "restrictions intended to make redemption difficult." *See* Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 U.C.L.A. L. REV. 991, 995 (2002). Although the court noted that the gift card could not be sold, the court did not scrutinize other restrictions on the gift cards. The card restrictions were not described in the Settlement Agreement but only "available at www.walmart.com." ER265-66. Because other restrictions could have negatively affected the redemption of the coupons (for example, will the shipping, registration, or return policies of

Walmart.com negatively affect redemption?), evidence of the actual redemption rate for purposes of calculating fees was particularly important.

If CAFA's requirement that the attorney-fee award be based on redeemed coupons is ignored, class counsel would receive "a disproportionate distribution of the settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In performing the *Bluetooth* disproportionality analysis, courts should compare the fees and the value of the funds actually available, rather than the amount potentially available. *See, e.g., Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8-9 (D.R.I. May 3, 2012) ("The amount of requested fees and costs is nearly 66% of the actual settlement amount"); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 U.S. Dist. LEXIS 49160, at *35-36 (N.D. Cal. Apr. 6, 2012) (holding that parties should have foreseen 83% disproportionate attorney-fee award based on the "total amount paid by Defendants to settle").

Treatment of the gift cards as identical to cash exaggerated the value of the settlement and rationalized an oversized attorney-fee award. "[C]ourts should avoid approaches that inflate or deflate the true value of such relief. For 'coupon' settlements, the value is the actual value of those coupons actually redeemed by class members." AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG § 3.13 cmt. a (2010). *See also id.* at cmt. a, illus. 3; 28 U.S.C. § 1712(a); Thomas A. Dickerson, CLASS ACTIONS: THE LAW OF 50 STATES § 9.03[1], at 9-39 to 9-40 (2005) ("In evaluating the merit of a non-cash settlement, the only proper means of measuring true value is by estimating the actual redemption rate.").

In contravention of CAFA, the district court made no distinction (and received no evidence) between the number of gift cards issued and the number redeemed. ER56-57; ER243-44. "Because redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned assessment of the settlement's actual value to the class." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH, 2011 U.S. Dist. LEXIS 68984, at *36 (D. Nev. Jun. 27, 2011). The failure to apply the actual redemption rate to value the gift cards for the purpose of determining fees is independent error requiring remand. 28 U.S.C. § 1712(a).

## C. The District Court Failure to Apply Heightened Scrutiny in Evaluating the Settlement May Also Require Remand.

28 U.S.C. § 1712 requires the court to analyze a coupon settlement with "heightened judicial scrutiny." *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). Under normal circumstances, the district court's error of treating this coupon settlement as a cash settlement would require remand not just to reevaluate the attorneys' fees, but also to consider the fairness of the settlement under the correct legal standard. After all, application of the wrong standard of law is *per se* an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ("A court abuses its discretion when it fails to apply the correct legal standard or bases its decision on unreasonable findings of fact.") (internal citations omitted).

In this particular instance, however, Frank concedes that, should the Ninth Circuit affirm the intervening ruling granting summary judgment to Netflix (Dkt. No. 542 and Appeal No. 11-18034), the failure to apply the correct standard of law to this particular settlement with an innocent defendant would be harmless error, and a remand on that particular question in this particular instance would likely be pointless. After all, an affirmance in No. 11-18034 would suggest that a settlement greater than zero that does not have undue intra-class conflicts would be fair; if the case were remanded the district court should, even under the higher scrutiny required by CAFA, approve the settlement, albeit with lower attorneys' fees reflecting the true value of the settlement to the class and the Ninth Circuit's 25% benchmark. Thus, Frank asks for a reversal and remand of the settlement approval only in the event that Appeal No. 11-18034 does not result in affirmance. Regardless of the result in No. 11-18034, Frank seeks reversal of the $8.5 million award to the attorneys from the settlement fund.

## II. The District Court's Award of $8.5 Million to the Attorneys When the Class Actually Received Only $5.2 Million in Cash and Coupons of Unknown Redemption Value Was an Abuse of Discretion.

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. Proc. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Here, the district court's fee award reasoned that the $6.8 million in attorneys' fees was 25% of the settlement

fund ($6.8 million/$27.2 million = 25%). ER21-22. The court's fee award, however, is based on an inflated common fund that improperly includes $4.5 million in notice and administrative costs in the denominator; the court also wrongly calculated the percentage of recovery by excluding $1.7 million in litigation expenses from the numerator. ER21-22; ER148; ER164. Based on these errors (as well as the inclusion of *issued* rather than *redeemed* coupons in violation of CAFA, *see* Section I.B above), the fee award provides class counsel with 62% of the common fund. While the district court's award is over twice this Circuit's 25% benchmark, the court offered no justification for such a significant departure (ER21-22; ER28-31) and thus the Rule 23(h) award requires reversal. ER251-53.

## A. Class Counsel's Award Is Based on an Improperly Inflated Calculation of the Benefit to the Class.

The $4.5 million notice and administration costs were wrongly included in the common fund for purposes of the attorney-fee award. Courts are permitted to utilize the percentage-of-recovery method in awarding attorneys' fees based on "a common fund for the *benefit of the entire class*." *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011) (emphasis added). The notion that class counsel is entitled to count the costs of notice and claims administration as a *benefit* to the class is fundamentally mistaken and poor public policy. Awarding attorneys' fees regardless of whether settlement money is paid to settlement administrators, the postal service, or to the class members (who are the attorneys' actual putative clients) creates poor incentives that contradict the purposes behind this Circuit's "percentage of the

recovery" fee approach. The recently decided *In re Aqua Dots Products Liability Litigation* is informative: the Seventh Circuit recognized that items such as the notice and class administration expense of class action settlement and litigation are a social cost that present an argument against class certification; if class notice was a class benefit, *Aqua Dots* would have reached the opposite result. 654 F.3d 748, 751 (7th Cir. 2011) (Easterbrook, J.).

This is demonstrated by examining the way the proposed calculation works in the real world. As part of its share of the settlement, class counsel in effect demands a cut of the court-approved fees and expenses of the claims administrator, as well as a cut of the administrative and maintenance fees associated with the settlement fund. But the money going to the claims administrator is money going to a third party, rather than the class, and should not be considered part of the common fund for purposes of calculating the fee award. Any other result is the economic equivalent of a kickback where class counsel gets money based on how much the settlement administrator bills. The commission that class counsel demands for administrative expenses is indefensible.

Such an arrangement creates an unnecessary conflict of interest between the attorney and the class. Every dollar the settlement administrator receives is a dollar that is not available to the class in settlement. If attorney fees are paid only on what the class receives, class counsel will have appropriate incentive to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if class counsel is given the same percentage whether

money goes to administrative expenses or the class, class counsel would have no financial incentive to oversee the efforts of the administrator, creating a perverse system of compensation that discourages assignment of resources to the class.

These principles are not solely a matter of common-sense economics; Judge Vaughn Walker made precisely this point in a case where he was evaluating competing bids for lead class counsel. "First, an attorney generally has no incentive to minimize litigation expenses unless his fee award is inversely related to such expenses. Second, when an attorney treats a resource devoted to litigation as a reimbursable expense, the attorney has a clear incentive to substitute that resource for those paid for out of the attorney fee, even if it increases the overall cost of the litigation to the client." *In re Wells Fargo Sec. Litig.,* 157 F.R.D. 467, 470 (N.D. Cal. 1994). Conversely: "If an attorney risks losing some portion of his fee award for each additional dollar in expenses he incurs, the attorney is sure to minimize expenses." *Id.* at 471. This principle of the need to align attorney incentives with maximizing class benefit is what lies behind several circuits' adoption of the "percentage-of-the-fund" approach in calculating fee awards that the Ninth Circuit uses. *In re Cendant Corp. Litig.,* 243 F.3d 722, 732 n.12 (3d Cir. 2001); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265-71 (D.C. Cir. 1993). *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005) (attorney fee calculations should use methods that align the interests of attorney and client).

Further, inclusion of administration costs in the common fund leads to absurd results. Imagine two hypothetical settlements of the hypothetical class action *Coyote v. Acme Products*:

| Acme Settlement One | | Acme Settlement Two | |
|---|---|---|---|
| Administrative Costs | $20 million | Administrative Costs | $1 million |
| Class Benefit | $1 million | Class Benefit | $20 million |
| Attorneys' Fees | $7 million | Attorneys' Fees | $7 million |

Settlement Two is worth twenty times as much to the class, but if administrative costs are included as class benefits, the two settlements would result in identical attorneys' fees. This is wrong.

This is more than a hypothetical concern in this case. Because there was no evidence regarding the redemption of the coupons, the only quantifiable relief being distributed to the class is $5.2 million in cash, which is far less than the $8.5 million in attorneys' fees and expenses. ER148 (431,952 claims multiplied by $12); ER21-22. Class counsel can only justify its large award by wrongly including the $4.5 million of administration costs to puff up the actual value. ER148; ER164. Class counsel thus had every incentive to increase administration costs: and they did. The settlement was structured so that a class member who requests cash could *only* submit a claim via regular mail. ER275. Although a gift card claim could be submitted via email, website, or regular mail, *see id.*, over 78% of the gift card claims were submitted online. ER147-48; ER275 (582,651 online submissions; 742,821 gift card claims). Depriving class members of the ability to opt for cash via electronic submission increased paper claims and thus increased administrative costs. *See also* ER148 (Hodne Decl.)

(discussing extraordinary anti-fraud administrative costs). The district court's award wrongly allows class counsel to recover a commission on administration costs that were multiplied by virtue of the structure class counsel designed.

Obviously, administrative costs are expenses that must be borne. But there is no reason to give class counsel a commission on these expenses. It is a poor use of limited and overburdened judicial resources to have judges closely scrutinize settlement administration expenses to determine whether they have been inflated when it is much simpler to merely align class counsel's incentives to optimize those expenses. *Cf. Wal-Mart*, 396 F.3d at 121. Instead, it is preferable for this Court to approve a superior system of attorney compensation that does not require district courts to shrink waste by means of judicial monitoring of cost overruns. "Put another way, incentives to minimize expenses and to allocate resources properly go much farther toward cost efficiency than can *post hoc* judicial review." *In re Wells Fargo Sec. Litig.,* 157 F.R.D. at 471.

The district court further erred in failing to account for $1.7 million characterized as "litigation expenses" in calculating the percentage. Money is fungible. There is no reason to distinguish dollars paid to paralegals and for overhead like office rent ("fees") and dollars paid to outside consultants and hotel rooms ("expenses"). Thus, in a number of cases, the Ninth Circuit and other courts include "expenses" with the attorneys' fees in the numerator when calculating the percentage of recovery. *See Dennis*, 2012 U.S. App. LEXIS 14385 at *6, *26 (calculating percentage versus benchmark based on "$2 million in fees and expenses"); *In re Imax Sec. Litig.*, No. 06

Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 86513, at *46-47 (S.D.N.Y. Jun. 20, 2012) (refusing to award 25% fee recovery because fees plus expenses totaled 39% of the settlement amount). Otherwise, class counsel is incentivized to treat resources as a litigation expense (because they will be reimbursed) and to increase those expenses (inflating the common fund value), all the while knowing that such reimbursable litigation expenses cannot be counted against the 25% benchmark.

At a minimum, if one is to exclude "expenses" from the numerator when calculating an attorney award under the percentage-of-the-fund approach, one should also exclude those same expenses in the denominator. When reimbursement for "litigation expenses" is included in the denominator but excluded from the numerator, class counsel receives fees for payments to *themselves*. Every dollar spent on meals and hotel rooms is not just a dollar taken from the class without consequence, but effectively creates an entitlement to a commission of an additional 25 cents in attorneys' fees when included in the denominator. Indeed, the danger of such commissions is compounded by the fact that class counsel has greater control over litigation expenses than third-party administration expenses.

In short, notice and administration costs are simply not a benefit to the class, and holding otherwise would distort incentives at the expense of unrepresented class members.[3] Litigation expenses should be included with attorneys' fees in calculating

---

[3] *Dennis* included notice and administration costs as a benefit to the class *arguendo*, but did not address the argument Frank makes here and does not provide any reasoning for doing so other than the *ipse dixit* of the settling parties. Nor does it seem that the appellants/objectors in that case challenged this incorrect calculation.

the percentage of recovery; at a minimum, they should be excluded from the settlement fund to avoid double-counting.

**B.    The District Court Offered No Justification for an Attorney-Fee Award That Exceeded the Pecuniary Class Recovery.**

If counsel "receive[s] a disproportionate distribution of the settlement," it is a "warning sign" that "class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998)). The benchmark for a reasonable award in the Ninth Circuit in a case alleging economic injury is 25% of the class benefit. *Dennis v. Kellogg Co.*, -- F.3d --, 2012 U.S. App. LEXIS 14385, at *21 (9th Cir. July 13, 2012); *Bluetooth*, 654 F.3d at 942; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Even if the plaintiffs wish an award based on their lodestar, a court must cross-check the request against the percentage of the fund. "Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'" *Bluetooth,* 654 F.3d at 945 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 n.40 (3d Cir. 1995)). A lodestar cross-check is there to provide a ceiling, not a floor.

---

Thus, the *dicta* in *Dennis* including notice and administration costs in calculating the class benefit should not be deemed persuasive, much less binding.

---

Below, the district court's calculation of attorneys' fees overvalues the settlement fund by using the amount of issued coupons (rather than redeemed) in contravention of the Class Action Fairness Act and by wrongfully including the $4.8 million in notice and claims administration costs. The court also wrongfully excluded from the numerator the $1.7 million litigation expenses that were awarded to class counsel. When the actual recovery is correctly calculated, the attorney-fee award exceeds 62% of the common fund:

| **Inflated Settlement Fund** | | **Actual Settlement Fund** | |
|---|---|---|---|
| Attorneys' Fees | $6.8 million | Attorneys' Fees | $6.8 million |
| Litigation Expenses | $1.7 million | Litigation Expenses | $1.7 million |
| Cash Claims | $5.2 million | Cash Claims | $5.2 million |
| *Gift Card Claims* | $8.9 million | *Redeemed Gift Cards* | $0 |
| *Administrative Costs* | $4.5 million | [*Administrative Costs Excluded*] | |
| TOTAL | $27.2 million[4] | TOTAL | $13.7 million |

$6.8M "fees" ÷ $27.2M fund = **25% of fund award**

$8.5M to attorneys ÷ $13.7M fund = **62% of fund award**

This 62% class counsel award was not, and cannot, be justified.[5] If the district court is to depart from the 25% benchmark, it must provide "adequate explanation in

---

[4] ER21-22; ER147-48; ER164.

[5] Even if the settlement fund was based on a 100% redemption rate of the gift cards and only corrected for the administrative and litigation expenses, the fee award would total 37% of the settlement fund ($8.5 M fees ÷ $22.7 M fund = 37.4%). Or, if the fund is not adjusted for administrative and litigation expenses but just corrected to reflect the known amount of redeemed coupons ($0), the fee award would also total 37% of the settlement fund ($6.8 M fees ÷ $18.3 M fund = 37.1%). The court's failure

the record of any 'special circumstances' justifying a departure." *Bluetooth*, 654 F.3d at 942; *accord Dennis*, 2012 U.S. App. LEXIS 14385, at *27. That was entirely absent from the record here; indeed, everything the district court determined about the case—that the coupons were of low value (ER115) and the plaintiffs' claims were meritless (Dkt. No. 542)—suggests that the plaintiffs' conduct is not the type to be incentivized, and any departure should be below the 25% benchmark rather than above it.

*Powers v. Eichen* is directly on point. 229 F.3d at 1256–58. There, the district court mentioned at an oral hearing that there were reasons to depart upward from the 25% benchmark, and reasons to depart downward from the benchmark, but issued an opinion that simply awarded 30% without explanation why it departed from the benchmark. *Id.* The Ninth Circuit remanded because it could not "conduct meaningful appellate review" on the reasoning for departing from a 25% benchmark. *Id.* at 1258. Here, the district court's 62% award is much more drastic than the departure in *Powers*, but the district court provided no justification for why such departure would be appropriate. ER21-22; ER28-31.

Even if one accepted the district court's calculation of the "benefit to the class" to include millions of dollars that was never paid to the class and the full face value of the coupons, the district court by its own terms awarded more than 25% of the "benefit." The district court calculated the class benefit to be $27.2 million, but

---

to provide justification for either departure remains an error. *Cf. Dennis*, 2012 U.S. App. LEXIS 14385, at *26-27 (remanding because when correctly calculated, 38.9% fee award was above presumptive benchmark).

awarded the attorneys $8.5 million ($6.8 million in fees and $1.7 million in expenses). As *Dennis* holds, however, one includes the total attorney award–both fees and expenses–when calculating the fee percentage. 2012 U.S. App. LEXIS 14385 at *6 ("$2 million in fees and costs"), *26. $8.5 million is 31% of the supposed $27.2 million benefit, and thus still too high without findings justifying an extraordinary departure under *Powers*.

The district court failed to justify its departure from the 25% benchmark. Because of this alone, its award of attorneys' fees cannot be affirmed.

## CONCLUSION

The district court's award to class counsel of $8.5 million significantly exceeds the actual benefit to the class of $5.2 million cash and coupons of uncertain redemption value. This is wrong. This Court should reverse the fee award and remand with instructions to apply the fee limitations of the Class Action Fairness Act and base the award on the number of coupons redeemed. This Court should further instruct that the attorney award must be based on the actual benefit received by the class: a settlement fund that excludes the notice and administration costs. Moreover, the total award of both fees and expenses should not exceed 25% of the class benefit in the absence of particularized findings meriting a higher percentage.

Furthermore, should the Ninth Circuit fail to affirm in Appeal No. 11-18034, the settlement approval must be remanded for evaluation under the correct legal standard of heightened scrutiny for coupon settlements.

Dated:  August 21, 2012            Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION
FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com

*In pro per*

## STATEMENT OF RELATED CASES
## PURSUANT TO NINTH CIRCUIT RULE 28-2.6

Appeal Nos. 12-15889, 12-15957, 12-15996, 12-16010, and 12-16038 are appeals by other objectors that have been consolidated with Frank's lead appeal.

*Resnick v. Netflix, Inc.*, No. 11-18034 (9th Cir.) is plaintiffs' appeal of the district court's order granting summary judgment for Netflix in this case. The appeal addresses the merits of plaintiffs' underlying antitrust claims. That case is fully briefed, but oral argument has not yet been scheduled. Appeal Nos. 12-16160 and 12-16183 from the district court in this case are a collateral appeal by the plaintiffs and a collateral cross-appeal by defendant Netflix relating to the district court's award of costs, and do not affect this appeal.

*Ciolino v. Hewlett-Packard Co.*, No. 11-16097 (9th Cir.), raises closely related issues relating to the scope of a district court's obligations under the Class Action Fairness Act, and the district court's failure to justify departure from the Ninth Circuit's 25% benchmark. That case is fully briefed, and involves the same appellant's counsel, but oral argument has not yet been scheduled.

Executed on August 21, 2012.

*/s/ Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION
FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tfrank@gmail.com

*In pro per*

# CERTIFICATE OF COMPLIANCE
# WITH FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 9,213 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Garamond font.

Executed on August 21, 2012.

*/s/ Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION
FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com

*In pro per*

**PROOF OF SERVICE**

I hereby certify that on August 21, 2012, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers. Additionally, I caused to be sent a copy of the foregoing via first class mail to the following non-registered attorneys:

Kathryn Parsons Hoek
Susman Godfrey L.L.P.
Suite 950
1901 Avenue of the Stars
Los Angeles, CA 90067-6039

Genevieve Vose
Susman Godfrey L.L.P.
Suite 3800
1201 Third Avenue
Seattle, WA 98101

Mark Lavery
The Lavery Law Firm
733 S Lee
Des Plaines, IL 60016

Executed on August 21, 2012.

/s/ Theodore H. Frank
Theodore H. Frank
CENTER FOR CLASS ACTION
FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tfrank@gmail.com

*In pro per*