CONSOLIDATED CASE NOS. 12-15705, 12-15889,
12-15957, 12-15996, 12-16010 and 12-16038

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

ANDREA RESNICK, et al.,
*Plaintiffs-Appellants-Cross-Appellees,*

v.

THEODORE FRANK, JON ZIMMERMAN, EDMUND BANDAS,
MARIA COPE, JOHN SULLIVAN and TRACEY KLINGE COX,
*Objectors-Appellants,*

v.

NETFLIX, INC., et al.,
*Defendants-Appellees-Cross-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

---

**ANSWERING BRIEF**

---

Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
Todd A. Seaver (SBN 271067)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Member of the Steering Committee for Plaintiffs in MDL No. 2029*
[Additional Counsel on Signature Page]

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF ISSUES ...................................................................................1

ADDENDUM STATEMENT ................................................................................3

STATEMENT OF CASE ......................................................................................3

STATEMENT OF FACTS .....................................................................................4

SUMMARY OF ARGUMENT ...........................................................................13

STANDARD OF REVIEW .................................................................................17

ARGUMENT .......................................................................................................18

I. THE DISTRICT CORRECTLY FOUND THE SETTLEMENT IS NOT A "COUPON SETTLEMENT" WHERE IT PROVIDES THE CHOICE OF CASH OR A GIFT CARD ......................................................18

    A. Courts Do Not Classify Settlements that Offer Gift Cards as "Coupon" Settlements ........................................................................18

    B. The District Court Correctly Found that the Settlement Does Not Force "Coupons" on the Class and Does Not Otherwise Give Rise to Problems Associated with Coupon Settlements .....................20

II. THE DISTRICT COURT MADE NO ERROR VALUING THE SETTLEMENT AT $27.25 MILLION .........................................................25

    A. On Its Face the Settlement Is an All-Cash Settlement .........................26

    B. The District Court Had Discretion to Infer that Class Members Choosing the Gift Card Valued It at Least as Much as the Same Amount in Cash .....................................................................27

III. CONTROLLING LAW HOLDS THAT A PERCENTAGE ATTORNEYS' FEE AWARD MUST BE BASED ON THE ENTIRE COMMON FUND .........................................................................................32

i

IV.     THE COURT-APPROVED NOTICE WAS ADEQUATE..........................36

V.     NONE OF THE OBJECTIONS CONCERNING THE FAIRNESS OF
     THE SETTLEMENT HAVE ANY MERIT ..................................................39

     A.    There Is No Reverter to Wal-Mart ......................................................39

     B.    The Incentive Awards to Class Representatives Were Fair and
            Reasonable..........................................................................................40

     C.    Potential Fees for Counsel in a Parallel State Action Also
            Resolved by the Settlement Would Come from Class Counsel's
            Fee Award ..........................................................................................40

     D.    The Fact that There Is an Opt-Out Provision in the Settlement Is
            Not Confidential but the Threshold Was Properly Confidential ........41

CONCLUSION .....................................................................................................43

**Cases**

*Carlini v. United Airlines*, No. 10 C 6343, 2011 U.S. Dist. LEXIS 43220 (N.D. Ill. Apr. 19, 2011) ..........................................................24

*Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008)... 20, 28, 29, 35

*Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292 (S.D. Fla. 2007)..................................................................................................15

*Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 112459 (N.D. Cal. Aug. 6, 2008)....................................21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .....................................17

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011), *aff'd*, 473 Fed. Appx. 716 (9th Cir. 2012).................................................33

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 1967, 2011 U.S. Dist. LEXIS 50139 (W.D. Mo. May 10, 2011).................................................................................................20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)............................................................................. 17, 18, 32

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)................................................................................................33

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................34

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)........................................................................... 38, 39, 42

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 842 F. Supp. 2d 346 (D. Me. 2012)..................................................................34

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ....................................................36

*Lane v. Facebook, Inc.*, Nos. 10-16380 & 10-16398, 2012 U.S. App. LEXIS 19767 (9th Cir. Sept. 20, 2012) .................................................. 17, 21, 36

*Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661 (7th Cir. 2004) ................................................................................................21

*O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 U.S. Dist. LEXIS 113809 (D.N.J. Aug. 8, 2012) ......................................... 16, 27

*Petersen v. Lowe's HIW, Inc.*, Nos. C 11-01996 RS, C 11-03231 RS, C 11-02193 RS, 2012 U.S. Dist. LEXIS 123018 (N.D. Cal. Aug. 24, 2012) ................................................................................................20

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa. 2011) ....... 14, 19, 21, 29

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................................36

*Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. June 27, 2011) ......................................22

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................ 33, 40

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ................................................................................................21

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010)...................................................................................... 15, 21, 22, 23

*Whittaker Corp. v. Execuair Sales Corp.*, 953 F.2d 510 (9th Cir. 1992) ...............42

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)........................................................................................... 2, 16, 32

*Young v. Polo Retail, LLC*, No. No C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ................................. 28, 29, 35

**Statutes & Rules**

12 C.F.R. § 205.20 .........................................................................................24

15 U.S.C. § 1 ...................................................................................................1

15 U.S.C. § 15 .................................................................................................1

15 U.S.C. § 1693 ........................................................................24

15 U.S.C. § 2 ..............................................................................1

15 U.S.C. § 26 ............................................................................1

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1331 ........................................................................1

28 U.S.C. § 1337 ........................................................................1

28 U.S.C. § 1712 ......................................................................14

28 U.S.C. § 1712(a) ............................................................ 14, 18

28 U.S.C. § 1712(b)(1) ............................................................14

28 U.S.C. § 1712(d) ................................................................26

Cir. R. 28-2.7 .............................................................................3

Fed. R. Civ. P. Rule 23 ............................................................41

Fed. R. Civ. P. Rule 23(c)(2)(B) ...............................................8

Fed. R. Civ. P. Rule 23(e) ................................................. 13, 36

## Other Authorities

Cristin Frederick, *Gift Card Value When Issuers Go Bankrupt*, 20
    (No. 1) COMMUNITIES & BANKING 11, 11 (Winter 2009) ...................................25

Jennifer Pate Offenberg, *Markets: Gift Cards*, 21 (No. 2) J. OF ECON.
    PERSPECTIVES 227, 233 (Spring 2007)................................29

The Credit Card Accountability Responsibility and Disclosure Act of
    2009, Pub. L. No. 111-24, §§ 401-403, 123 Stat. 1734, 1751-54
    (2009) ..................................................................................24

# STATEMENT OF JURISDICTION

On January 2, 2009, Andrea Resnick filed a class action suit in the United States District Court for the Northern District of California ("District Court") on behalf of a putative class of Netflix subscribers (collectively, "Plaintiffs") alleging violations of the Sherman Act §§ 1-2, 15 U.S.C. §§ 1-2, by Defendants Netflix, Inc. ("Netflix"), and Wal-Mart Stores, Inc. and Walmart.com USA LLC (collectively "Wal-Mart"). The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 15 U.S.C. §§ 15 and 26.

On March 29, 2012, the District Court entered final judgment in the lawsuit approving the Settlement and releasing Class Members' claims against Wal-Mart. (ER 1.) [1] Objectors to the Settlement timely filed notices of appeal. Jurisdiction exists pursuant to 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

1. The Settlement creates a $27.25 million common fund and offers the Settlement Class Members a *pro rata* payment in their choice of cash or a Walmart.com electronic gift card ("Gift Card").

---

[1] Throughout, cites to "ER" are to the Excerpts of Record filed by Objector-Appellant Theodore H. Frank. Cites to "SER" are to the Supplemental Excerpts of Record submitted herewith. Cites to "Dkt." refer to the District Court docket, provided within the ER at 321-454.

(a)     Did the District Court correctly find that the Settlement is not a "coupon" settlement pursuant to the Class Action Fairness Act ("CAFA"), where the Walmart.com Gift Card is a promise of ready accessibility to underlying funds, never expires, carries its balance forward, is fully transferable, and enables the recipient to purchase thousands of useful consumer goods through the world's largest retailer?

(b)     Did the District Court abuse its discretion by finding that "a gift card is not a coupon" where courts routinely do not treat gift cards as "coupons" subject to CAFA?

2.     Did the District Court abuse its discretion by valuing the Walmart.com Gift Cards at their $12 face value where every Gift Card recipient affirmatively chose the Gift Card over a $12 cash award?

3.     Did the District Court abuse its discretion by following controlling precedent in this Circuit and basing the 25% attorneys' fee award ($6,812,500) on the entire Settlement fund?  *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

4.     Did the District Court abuse its discretion by finding the $4.5 million paid by Wal-Mart for notice and claims administration inured to the benefit of the Class and including it as part of the $27.25 million total value of the common fund?

## ADDENDUM STATEMENT

An Addendum is filed concurrently in the form of a separate, bound volume in accordance with Cir. R. 28-2.7.

## STATEMENT OF CASE

Andrea Resnick filed suit seeking to represent a class of persons who paid a subscription fee to Netflix to rent DVDs. Related complaints were transferred to the District Court and consolidated as *In re Online DVD Rental Antitrust Litigation*. Dkt. Nos. 1, 7, 27.

The Plaintiffs' amended consolidated complaint alleged that in May 2005, Defendants Netflix and Wal-Mart entered into an illegal, anti-competitive agreement to allocate the online DVD Rental market in the United States in violation of the Sherman Act, and that as a result Class Members paid supra-competitive prices for online DVD rentals. Dkt. No. 22. The District Court certified a litigation class of Netflix subscribers on December 23, 2010. Dkt. No. 287. Wal-Mart settled with the Class in July 2011 (ER 264-310). The District Court approved the Settlement at the final fairness hearing on March 14, 2012 (ER 44-142). Shortly thereafter the District Court formally ordered final approval of the Settlement and certification of the Settlement Class of Netflix subscribers, entered final judgment and approved Class Counsel's request for attorneys' fees and partial reimbursement of expenses. (ER 1-19, 20-22.)

After the Settlement with Wal-Mart was preliminarily approved (Dkt. No. 492), but prior to final approval, the District Court granted summary judgment to the remaining defendant, Netflix (Dkt. Nos. 542, 544; SER 4).

## STATEMENT OF FACTS

**Litigation Overview.** The appeal concerns a partial settlement of a hard-fought multi-year antitrust class action that ended with summary judgment granted for the non-settling defendant virtually on the eve of trial.

Plaintiffs are Netflix subscribers who rented DVDs using Netflix's online delivery service, whereby the subscriber is able to rent movies on DVD through the Netflix website, then receive and return the DVDs by U.S. mail. Plaintiffs alleged that Netflix and Wal-Mart agreed to restrain trade in and monopolize the online DVD rental market, with Wal-Mart exiting the DVD rental market and Netflix agreeing not to sell new DVDs in competition with Wal-Mart. Plaintiffs alleged that this market allocation was unlawful and part of Netflix's effort to willfully acquire and maintain a monopoly. Netflix enjoyed a market share of over 70% and, Plaintiffs asserted, charged supracompetitive prices to its subscribers. The case involved substantial damages, estimated by Plaintiffs' expert to be in the hundreds of millions of dollars. Almost three years after the filing of the complaint, the District Court granted Netflix's motion for summary judgment. (ER

339-67.) Plaintiffs' appeal of that decision is fully briefed and pending in this Court as Case No. 11-18034.

The class of Netflix subscribers certified for purposes of the Settlement with Wal-Mart consists of "[a]ny person or entity residing in the United States or Puerto Rico that paid a subscription fee to rent DVDs online from Netflix on or after May 19, 2005, up to and including the date the Court grants Preliminary Approval of the Settlement." (ER 270-71.)

Prior to reaching the Settlement Agreement with Wal-Mart in July 2011, Plaintiffs won certification of a litigation class of Netflix subscribers. Dkt. No. 287. Netflix later moved to decertify the litigation class based on a claimed conflict of interest of Lead Counsel for the Class, but the District Court denied the motion, finding no basis for disqualification. (SER 1-2.)

The litigation was sharply contested, matching Class Counsel against Netflix and Wal-Mart, two corporations with significant resources that retained experienced antitrust counsel. In the course of discovery, Class Counsel obtained and reviewed millions of pages of documents, took or defended over fifty depositions across the country, and produced thousands of pages of documents and answered written interrogatories. (SER 7, ¶¶ 4-7.) Class Counsel extensively briefed a multitude of complex antitrust issues, as expected in a case alleging an unlawful conspiracy and monopolization, including antitrust standing, antitrust

injury, *per se* liability, rule of reason liability, relevant market, market power and causation. (*Id*.)

In addition, Plaintiffs retained testifying and consulting experts to assist with economic and industry complexities and worked intensively with those experts, eventually defeating two *Daubert* motions by Netflix seeking to exclude their testimony. (SER 3-4.)

Class Counsel carried the fight with Netflix until the eve of trial, submitting their trial witness list and trial brief only to then have the District Court grant Netflix's summary judgment motion. Dkt. Nos. 539, 540.

Ultimately, Class Counsel worked over 45,000 hours on behalf of the Class for a contingent fee, with no guarantee of payment. (SER 6,¶ 3.) Class Counsel also advanced over $3.3 million in out-of-pocket expenses at the risk of total loss (SER 6, 8-9, ¶¶ 3, 15.)

**Settlement Agreement.** In exchange for dismissal with prejudice and a release of all claims asserted in the operative complaint, Wal-Mart agreed to pay $27,250,000 ("Settlement Amount"). (ER 271 at ¶ 6.) The Settlement Amount funds Class Member recoveries, the cost of notice, the cost of administering claims, incentive payments of $5,000 to nine Settlement Class Representatives, and reasonable attorneys' fees and expenses. (ER 271-77 at ¶¶ 6-8.) The Settlement also requires Wal-Mart to provide cooperation to Class Counsel with respect to

discovery and to provide assistance qualifying documents as business records and with other admissibility requirements at trial.  (ER 290 at ¶ 26.)

The Settlement Agreement gives Class Members the freedom to choose their *pro rata* share of the net Settlement fund in the form of cash or a Walmart.com electronic Gift Card in the same amount.  (ER 271-73.)  There were no caps or restrictions on choosing cash—every Class Member making a claim could choose cash if he or she preferred.  Paragraph 6.1.2.3 of the Settlement provides:

> 6.1.2.3.  Any Settlement Class Member who wishes to receive a cash payment instead of a Gift Card shall be eligible to do so . . . .  Cash payments instead of a Gift Card shall be in the same amount as the Gift Card would have been . . . .

(ER 272-73 at ¶ 6.1.2.3.)

The Settlement was the product of intense, arm's-length negotiations by experienced and informed counsel.  It followed a mediated first settlement with Wal-Mart of the Netflix subscribers' class action and a separate, consolidated class action on behalf of Blockbuster subscribers.  The District Court declined to preliminarily approve the two-case settlement (Dkt. No. 348; ER 83-84).  Class Counsel then involved independent settlement counsel to lead renewed negotiations with Wal-Mart solely on behalf of Netflix subscribers.  (SER 10; ER 83-84.)  The negotiations occurred over many months and involved face-to-face and telephonic meetings.  (*Id.*)

**Notice.** Class Counsel carried out the notice plan approved by the District Court for the nearly 35 million Netflix subscribers in the Settlement Class. The court-approved notice and claims administrator utilized a list, furnished by Netflix, of Class Members' names, email addresses and regular mail addresses. Dissemination consisted of emailed notice to the 34,916,939 Class Members. (SER 13, ¶ 3.) Anticipating some portion of emails would not be successfully delivered, the District Court ordered direct mailed notice to those Class Members whose emails bounced back, which ultimately totaled over 9.5 million pieces of mail. (SER 21, ¶¶ 7-9.)

The court-approved summary notice provided all the information required by Fed. R. Civ. P. Rule 23(c)(2)(B). With regard to attorneys' fees and expenses, the notice stated that Class Counsel would make an attorneys' fee request up to 25% of the fund and would seek reimbursement of up to $1.7 million in litigation expenses. (SER 23-24.) Moreover, the deadline to object or opt out of the Settlement was set for February 14, 2012, fifteen days after the January 30, 2012 deadline Class Counsel was to petition for an award of attorneys' fees and reimbursement of expenses. (SER 24.)

The notice directed Class Members to the claims website for updates on the Settlement and updates on the continuing litigation against Netflix. (SER 23-24.) When Netflix won summary judgment after notice had been disseminated to the

Settlement Class, Class Counsel obtained an order from the District Court causing notice to be revised to include information about the grant of summary judgment, updating the Settlement website and modifying certain yet-to-be-mailed direct mail notices accordingly. (Dkt. Nos. 546, 548; ER 104-05.) The Class continues to pursue the case against Netflix (currently on appeal).

Notice and administration costs ultimately totaled just over $4.5 million, the bulk of it going to the comprehensive email and direct mail notice plan to a 35 million member Class.

**Claim Form.** Class Members who wished to make a claim to the Settlement submitted a simple claim form either online or by mail. The claimant needed to check one box, for either the Gift Card or Cash Payment. (ER 318.) To elect cash, the claimant needed to provide the last four digits of his or her Social Security Number and mail in the claim form. (*Id.*) If electing the Gift Card, the claimant could submit the form online or by mail.

**Final Approval.** The claims process saw 1,183,444 Class Members file a claim. (ER 82.) By an almost two-to-one ratio, Claimants chose the electronic Gift Card over a cash award of the exact same amount. In total, 744,202 (63%) of all Claimants preferred the Gift Card and 434,253 (37%) chose cash. (*Id.*) The claim response represents approximately 3.5% of the estimated 35 million

Settlement Class Members. At this participation rate, the *pro rata* amount which Claimants will receive is approximately $12.00.

The Settlement fund net of deductions is $14,143,782. This is arrived at by deducting the following from the Settlement Amount of $27,250,000: $6,812,500 in attorneys' fees, $1,700,000 in litigation expenses, $4,548,718 in notice and claims administration costs, and $45,000 for nine incentive awards to Class Representatives.

A total of 722 timely requests for exclusion were made. (SER 22, ¶ 20.) A total of thirty Class Members lodged objections. (SER 27-32.)

A final fairness hearing was held and all objectors had an opportunity to be heard. (ER 44-142.) After considering the objections, the District Court approved the Settlement. (ER 1-19, 110-20.) The Court considered the relevant factors, including strength of Plaintiffs' case, the risk of further litigation, the risk of maintaining the class certification, the amount offered in the Settlement, the extent of discovery completed and the stage of proceedings, and the reaction of the Class Members to the proposed Settlement. (ER 3-4.) In particular, the District Court recognized that the summary judgment ruling in Netflix's favor put the earlier Settlement in an even more positive light, contributing to its fairness, reasonableness and adequacy. (ER 110-11, 119-20.)

The principal objection to the Settlement was that it is a "coupon settlement" under CAFA. The District Court rejected this objection, reasoning that while one can argue that gift cards share some characteristics with coupons, "a gift card is not a coupon." (ER 112.) Gift cards are distinct from coupons, the District Court found, "particularly when they have the attributes of this particular Gift Card." (*Id*.) The showing that the Walmart.com electronic Gift Cards are transferable, have purchasing power equal to their face value, never expire, and carry their balance forward were all attributes that together distinguished the Gift Cards here from "coupons." (ER 108-10, 112-13.)

The District Court emphasized that the structure of the Settlement ensures that the Gift Cards are not "coupons" within the meaning of CAFA. "[T]he ability of the Class Members to choose whether or not they want cash or a Gift Card, I think makes this settlement closer to a cash settlement than it is to a coupon settlement." (ER 113.) The District Court found "given the fact that Class Members were given the choice" of cash over the Gift Card, the problem always found with coupon settlements—that they "force" the class member into a relationship with the defendant—is not present here. (ER 115.)

**Award of Fees and Expenses.** The District Court approved Class Counsel's request for attorneys' fees and partial reimbursement of expenses on March 29, 2012. (ER 1-19, 20-22.) Using the percentage-of-the-fund method, the

District Court found that the attorneys' fee benchmark of 25% of the total Settlement fund is reasonable in this case. (ER 21 at ¶¶ 2-3; ER 117-19.)

The lodestar cross-check confirmed the reasonableness of the fee request of 25% of the fund. The District Court recognized that even if it cut some of the time—which "I always do" (ER 119) —the lodestar is "more than three times as much as . . . the amount of the 25 percent benchmark." (ER 119.) The Court concluded that, indeed, "the Class is in a much better position [using the percentage-of-the-fund approach] than having a lodestar" calculation be the basis for the attorneys' fee. (ER 119.)

With regard to reimbursement of out-of-pocket litigation expenses, the District Court acknowledged that Class Counsel had risked a total loss of the expenses it advanced on behalf of the Class, and that Class Counsel was requesting reimbursement of only $1.7 million of its over $3.3 million in unreimbursed expenses. (ER 21 at ¶ 3).

**Objectors.** Of the thirty objectors to the Settlement (*see* SER 27-32), six have filed a total of five separate appeals: Edmund Bandas, Maria Cope, Theodore Frank, Tracey Klinge Cox, John Sullivan and Jon Zimmerman. Counsel for

objectors Frank, Sullivan and Zimmerman appeared at the final fairness hearing and addressed the District Court with oral argument.[2]

## SUMMARY OF ARGUMENT

The District Court was firmly within its discretion in determining the Wal-Mart Settlement for $27.25 million is fair, reasonable and adequate under Fed. R. Civ. P. Rule 23(e). The District Court presided closely over this complex and combative litigation for three years. The litigation with defendant Netflix went to the brink of trial before the Court granted Netflix's motion for summary judgment. Especially in light of that outcome, the Settlement with defendant Wal-Mart is an exceptional result, and for now (while appeal of the summary judgment decision is pending) represents the only chance for recovery that the Class of Netflix subscribers have.

The Settlement offers Class Members a *pro rata* share of the net Settlement fund in their choice of cash or the equivalent amount loaded onto an electronic Walmart.com Gift Card. The claims experience shows that of the over 1.1 million Claimants, 744,202 (63%) preferred the Gift Card and 434,253 (37%) chose cash. The *pro rata* amount Claimants will receive is approximately $12.00.

---

[2] The Objectors declined to follow this Court's suggestion that they coordinate their appeal briefing. ECF No. 633 at 1-2, May 8, 2012 ("The parties are encouraged to file one brief covering all the consolidated appeals.").]

1.     The District Court correctly found that the offer of a choice between cash and a Walmart.com Gift Card of equal value is not a "coupon settlement" under CAFA.  The Objector-Appellants do not dispute that the Gift Cards are something other than coupons.  They argue instead that gift cards resemble coupons, and so CAFA ought to be expanded by courts to regard gift cards as coupons.

The objectors cannot point to a single case where a court has determined that a gift card is a "coupon" under CAFA.  To the contrary, courts routinely treat gift cards as distinct from coupons where CAFA is concerned.  *See*, *e.g.*, *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255-56 (E.D. Pa. 2011) ("[G]ift cards are more like 'cash' than 'coupons'" so rejecting application of CAFA § 1712).

In any case, a settlement offer of coupons does not violate CAFA.  The consequence of offering coupons in a class action settlement—which this Settlement does not—is that CAFA requires that the determination of an attorney fee award based on a percentage of the common fund must wait until the coupons are redeemed in order to calculate the fee.  *See* 28 U.S.C. § 1712(a).  Otherwise, CAFA permits the attorneys' fee to be based on the hourly work (such as the lodestar method) to determine a reasonable attorneys' fee.  28 U.S.C. § 1712(b)(1).

Here, the Gift Cards are a promise of ready accessibility to underlying funds. They never expire. (For this reason alone it is impractical to wait for them to be

used in order to determine the attorneys' fee.)  They are transferable, will carry any unused balance forward, and can be used to purchase thousands of diverse, desirable consumer goods at Walmart.com, everything from clothing to movies on DVD.

By contrast, while CAFA does not define "coupon," courts commonly recognize a "coupon" as providing no option other than to "require class members to do future business with the defendant in order to receive compensation." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (describing "coupon settlement" within meaning of CAFA) (quoting *Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007)).

Here, the District Court exercised its sound discretion to find: "[G]iven the fact that Class Members were given the choice" of cash over the Gift Card, the problem always found with coupon settlements—that they "force" the class member into a relationship with the defendant—is not present here.  (ER 115.)  Indeed, a Class Member will only have to patronize Wal-Mart to enjoy the settlement benefit if the Class Member chooses that outcome, and such patronage will not necessarily require Class Members to expend money of their own in order to realize the benefits of the Settlement.

2.     The District Court was within its discretion to find that the Settlement created a common fund of $27.25 million.  Remand is not needed to generate

evidence of the Gift Cards' value. That evidence already existed and, contrary to the objections, the District Court correctly valued the Settlement at $27.25 million. The Gift Cards are worth at least their face value to the Claimants who chose them. The District Court focused on the fact that the Claimants "by two-to-one have elected the Gift Cards instead of the cash component." (ER 113.) As one court recently observed when valuing the size of the settlement fund where the settlement offered class members a choice of $20 in cash or a coupon for 50% off selected products: "[T]he only inference the Court can draw is that the class members choosing the coupon value it at least as much as the twenty dollar cash payment, for if they valued it less, they would have opted for the cash." *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 U.S. Dist. LEXIS 113809, at *72 (D.N.J. Aug. 8, 2012). The District Court was within its discretion to make the same inference.

3. The District Court followed the controlling law in this Circuit by basing the 25% attorneys' fee ($6,812,500) on the entire settlement fund of $27.25 million. *Williams*, 129 F.3d at 1027. Contrary to the objections, notice and claims administration inure to the benefit of the Class. Consequently the $4.5 million Wal-Mart paid into the fund for notice and claims administration is properly included in valuing the total fund. Likewise, reimbursement for Class Counsel's

reasonable litigation expenses from the settlement fund is properly part of the total fund on which the percentage-of-the-fund attorneys' fee is calculated.

4.     The District Court did not err when it "didn't find one objection [ ] sufficient or—singular or in the aggregate—to preclude me from approving this settlement." (ER 112.) The objections concerning the adequacy of notice, the incentive awards to Class Representatives, and the mistaken claim that the Settlement contains a reverter to Wal-Mart lacked merit and the District Court was well within its discretion to overrule them.

## STANDARD OF REVIEW

It is well-established that a district court's approval of a class action settlement is reviewed for "clear abuse of discretion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011). Only a "strong showing" will warrant setting aside a decision to approve a settlement, because "[a]ppellate review of the district court's fairness determination is 'extremely limited'." *Lane v. Facebook, Inc.*, Nos. 10-16380 & 10-16398, 2012 U.S. App. LEXIS 19767, at *9 (9th Cir. Sept. 20, 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998) (reasoning broad discretion required because district court "is exposed to the litigants, and their strategies, positions and proof") (internal quotation marks omitted)).

A district court's award of fees and expenses is likewise reviewed for clear abuse of discretion, including the "method of calculation." *Bluetooth Headset*, 654 F.3d at 940. "Findings of fact underlying an award of [attorneys'] fees [and expenses] are reviewed for clear error." *Id.*

## ARGUMENT

## I. THE DISTRICT CORRECTLY FOUND THE SETTLEMENT IS NOT A "COUPON SETTLEMENT" WHERE IT PROVIDES THE CHOICE OF CASH OR A GIFT CARD

Objectors Frank, Sullivan and Zimmerman each objected below that the Settlement is a "coupon settlement." Objectors Frank and Sullivan now appeal the order awarding attorneys' fees because they insist CAFA at 28 U.S.C. § 1712(a) requires the District Court to wait and see how many Walmart.com Gift Cards are actually used and in what amount before determining the value of the Settlement and, therefore, the value of the attorneys' fee request of 25% of the fund.

### A. Courts Do Not Classify Settlements that Offer Gift Cards as "Coupon" Settlements

The objectors fail to provide a single authority that says a gift card is a coupon as a matter of law, and CAFA does not define "coupon." Several courts, however, have approved class action settlements that offered gift cards and have not applied CAFA's § 1712(a), and in some cases have outright rejected its

application to gift cards.  The District Court did not commit an error of law in finding the Walmart.com Gift Cards are not "coupons."

In *Reibstein*, the settlement offered class members Rite Aid gift cards with a face value of $20.  The court, cognizant that CAFA called for "scrutiny" of coupon settlements, concluded that the gift cards were not "coupons" within the meaning of CAFA.  *Reibstein*, 761 F. Supp. 2d at 255-56.  The court described the gift cards as having "actual cash value" and "have no expiration date, are freely transferable, and can be used for literally thousands of products for which ordinary consumers, including class members, have need." *Id.*  The court found, "[u]nder these circumstances, the gift cards are more like 'cash' than 'coupons.'" *Id* at 256.  It added, "[i]n fact, because the class members are likely to shop at Rite Aid again, they may even prefer the $20 gift cards to the lesser value that would have been awarded had the parties opted to provide a cash award." *Id*.

The Walmart.com Gift Cards have the same attributes as those in *Reibstein*: they do not expire, are transferable, have a cash value and can be used for thousands of products at Walmart.com, including clothing, groceries, jewelry, books, music, movies, pharmacy items, and electronics. (SER 11; ER 108-10; 272 at ¶ 6.1.2).[3]

---

[3]  *See, e.g.,* Walmart.com: All Departments, http://www.walmart.com/cp/All-Departments/121828 (visited on Jan. 25, 2012) (SER 11).

The court in *Petersen v. Lowe's HIW, Inc.*, Nos. C 11-01996 RS, C 11-03231 RS, C 11-02193 RS, 2012 U.S. Dist. LEXIS 123018 (N.D. Cal. Aug. 24, 2012) (Seeborg, J.) approved a settlement that offered class members $9 Lowe's gift cards that were transferable, redeemable for cash, and did not expire. *Id.* at *4-5. The court did not treat the gift cards as "coupons" under CAFA. *See also Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) (approving settlement offering Victoria Secret gift cards without application of CAFA); *cf. In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 1967, 2011 U.S. Dist. LEXIS 50139, at *47-49 (W.D. Mo. May 10, 2011) (rejecting argument that settlement was "coupon" settlement under CAFA where class members offered cash and vouchers because vouchers "can be used for a wide variety of products" and did not require consumers to spend money to redeem them).

**B. The District Court Correctly Found that the Settlement Does Not Force "Coupons" on the Class and Does Not Otherwise Give Rise to Problems Associated with Coupon Settlements**

Where courts have articulated definitions of "coupon" settlements, those definitions do not fit when it comes to the Walmart.com Gift Cards.

The Seventh Circuit, for example, has defined coupon settlements as those offering "just a discount on a proposed purchase." *Synfuel Techs, Inc. v. DHL*

*Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). Another defined coupon settlements as "promot[ing] sales without lowering the price to everyone (that is, holding a 'sale')." *True*, 749 F. Supp. 2d at 1075 (internal quotation marks omitted) (quoting *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 662 (7th Cir. 2004)). It added: "[C]oupons aim to facilitate a sale to a purchaser who would not otherwise purchase a product at a higher price . . . ." *True*, 749 F. Supp. 2d at 1075; *see also Reibstein*, 761 F. Supp. 2d at 255 (defining "coupon settlement" as one where class members provided with "'a future discount on a product or service with which they were previously dissatisfied'") (citation omitted).[4]

Recently, in *Lane,* 2012 U.S. App. LEXIS 19767, while the majority did not define "coupon settlement," the dissenting opinion (Kleinfeld, J.) defined them as those settlements "where the class members get only discounts if they buy again from the defendant claimed to have wronged them before, while their purported

---

[4] The Walmart.com Gift Cards do not resemble any of the types of non-cash benefits that CAFA's legislative history suggests could constitute "coupons." Courts have looked to CAFA's legislative history for specific illustrations of other non-cash benefits that Congress intended to be viewed as coupons: (i) the promise of a crib repair kit or a coupon for $55 toward the future purchase of a crib; (ii) the promise of discounts on Poland Spring water or free water; and (iii) the promise of free golf gloves or golf balls. *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 112459, at *10-11 (N.D. Cal. Aug. 6, 2008). The Walmart.com Gift Cards aren't remotely similar to any of these prototypical non-cash benefits.

lawyers get huge amounts of money." *Id.* at *51. The Walmart.com Gift Cards are not mere discounts; at a $12 face value, one Gift Card can buy a range of whole products, even a movie on DVD.[5]

The Walmart.com Gift Cards do not operate in a way that would place them within these definitions of "coupons." They do not necessarily promote a "sale" to the holder of the Gift Card. They do not attract the consumer to buying a particular good at a discount price where the consumer would not buy that good at a higher price.

The cases relied on by Objectors Frank, Zimmerman and Sullivan are completely different on their facts. For example, Objectors cite *True*, 749 F. Supp. 2d 1052, where a proposed class settlement gave a consumer class of Honda owners a $500 or $1,000 rebate on a purchase of a new Honda, with the rebates being non-transferable and expiring in twelve months. To enjoy the benefit of the settlement, the class members had to buy a new car within the next twelve months from the settling defendant, and even with the rebate they would have to spend a substantial sum of their own money. They could not even give the coupon away.

Likewise, Objectors rely on *Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. June 27, 2011) in their argument

---

[5] *See, e.g.,* Walmart.com: All Departments, http://www.walmart.com/cp/All-Departments/121828 (visited on Jan. 25, 2012).

that Gift Cards are "coupons." There, the court described the settlement as "strictly a coupon settlement. There is no settlement fund or any provision for cash payments . . . . Instead, each Defendant would issue a coupon . . . for a discount on a future car rental." *Id.* at *13. The coupons were valid for only 18 months and "non-transferable." *Id.* at *14.

These classic coupon settlements give rise to the three oft-cited problems with coupon settlements, *i.e.*, they (i) "'require class members to do future business with the defendant in order to receive compensation'"; (ii) "'they often fail to disgorge ill-gotten gains from the defendant;'" and (iii) "'they often do not provide meaningful compensation to class members.'" *True* 749 F. Supp. 2d at 1069 (citation omitted).

The Settlement here does not suffer from any of these problems. As the District Court found, the fact that the Class had freedom to choose payment in cash and eschew the Gift Card means that the Settlement does not force a relationship with Wal-Mart. (ER 115.) An offer of cash is unquestionably meaningful, and the Gift Card being chosen two-to-one over the cash shows the Gift Card is likewise meaningful compensation. Finally, the Settlement as a whole disgorges a significant amount from Wal-Mart. Wal-Mart is paying cash to fund aspects of the Settlement in addition to the Gift Cards, all of which inure to the benefit the Class:

the notice and administration costs, the attorneys' fees and expenses, the incentive awards, and, of course, the cash payments to those who claimed cash.

Federal law also regulates gift cards in a manner that strongly suggests they are an electronic version of cash. The United States Federal Reserve recently expanded the scope of the Electronic Fund Transfer Act of 1978 (EFTA), 15 U.S.C. § 1693 et seq., to include store gift cards. The Federal Reserve implements the EFTA through "Regulation E" which was amended in 2010 to include store gift cards, which are regulated alongside debit card transactions, ATM transactions, overdraft protection services, and other electronic transfers of money. *See* 12 C.F.R. § 205.20. The Federal Reserve's rules (for example, prohibiting expiration, disallowing service fees) are based on the concept that a gift card promises ready access to the underlying funds that are behind the promise. *See Carlini v. United Airlines*, No. 10 C 6343, 2011 U.S. Dist. LEXIS 43220, at *9-10 (N.D. Ill. Apr. 19, 2011) (explaining rationale for EFTA rules governing gift cards).[6] Indeed, the Federal Reserve explains:

---

[6] Another federal law establishes a parallel regulatory regime for gift cards. The Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, §§ 401-403, 123 Stat. 1734, 1751-54 (2009) governs "Store Gift Cards" and, among other things, generally bars them from expiration, prohibits fees and charges to be levied against the balance, requires them to be issued in a specific dollar amount and to be honored, like cash, upon presentation at the issuing merchant. *Id.*

> When consumers buy gift cards from a retailer, it's a form of savings. They are paying up-front for future purchases at that company, either for themselves or for someone to whom they are giving a gift.

Cristin Frederick, *Gift Card Value When Issuers Go Bankrupt*, 20 (No. 1) COMMUNITIES & BANKING 11, 11 (Winter 2009).[7]

The concept of gift cards that animates the Federal Reserve's position is, in the final analysis, the most apt definition of what a Walmart.com Gift Cards is: a promise of ready accessibility to underlying funds. That is why the District Court was correct to find that the Settlement here is "closer to a cash settlement than it is to a coupon settlement." (ER 113.)

The District Court applied the correct legal standard by refusing to treat the Gift Cards as "coupons" under CAFA. Because nothing required the District Court to wait in perpetuity for the Gift Cards to be redeemed before awarding attorneys' fees, the Order awarding attorneys' fees using the percentage-of-the fund approach should be affirmed.

## II. THE DISTRICT COURT MADE NO ERROR VALUING THE SETTLEMENT AT $27.25 MILLION

The District Court was well within its broad discretion to find that the Settlement created a common fund of $27.25 million. Objectors Frank, Sullivan,

---

[7] *Available at* www.bos.frb.org/commdev/c&b/2009/winter/Frederick_gift_cards_and_bankruptcy.pdf.

Klinge Cox and Zimmerman contend that the District Court lacked the evidence necessary to conclude the Gift Cards have any value, and so the Court could not find the Settlement to be fair, reasonable and adequate without something more. Zimmerman Br. 12-25; Frank Br. 23-24; Sullivan Br. 57-59; Klinge Cox Br. 23.

One Objector urges remand so the District Court can receive "evidence" of the economic value of the Gift Cards. Sullivan Br. 58, 72 (citing CAFA's encouragement—not requirement—that with coupon settlements the court has discretion to receive expert testimony on coupons' value; *see* 28 U.S.C. § 1712(d)). Another contends that economic evidence exists in the form of an academic article showing that some gift cards are worth 80% of their face value when resold on an Internet auction site, and the District Court erred by not receiving evidence of that ilk. Zimmerman Br. 16-20.

### A. On Its Face the Settlement Is an All-Cash Settlement

The Objectors ignore the fact that on its face the Settlement is an all-cash settlement. That is, Wal-Mart stood to fund the entire $27.25 million Settlement Amount in cash. There is no ceiling in the Settlement Agreement on the number of Claimants who could choose cash. If the over 1.1 million Claimants had all elected to take their *pro rata* award in cash, every single one would receive a check for approximately $12.00. The Objectors' argument that the total value of the

Settlement cannot be discerned ignores this fact. The value of the Settlement is $27,250,000, not a dollar less.

**B.    The District Court Had Discretion to Infer that Class Members Choosing the Gift Card Valued It at Least as Much as the Same Amount in Cash**

The actual claims experience here shows that, by a landslide, the Claimants preferred the Gift Cards to cash. The District Court correctly focused on the fact that the Claimants "by two-to-one have elected the Gift Cards instead of the cash component." (ER 113.)

The claims experience permitted the District Court to infer that the Claimants choosing the $12 Gift Card value it at least as much as the $12 cash payment. Indeed, in a recent case where a court valued a settlement where class members were offered a choice between $20 in cash or a coupon for 50% off selected products, the court observed: "[T]he *only* inference the Court can draw is that the class members choosing the coupon value it at least as much as the twenty dollar cash payment, for if they valued it less, they would have opted for the cash." *O'Brien*, 2012 U.S. Dist. LEXIS 113809, at *72 (emphasis added).

The lynchpin of a court's assessment of a gift card's value must be *whether the recipient desires the gift card*. In addition to the *O'Brien* court, other courts have valued gift cards in the class action settlement context, and each time the

critical variable is whether there is any evidence that class members who receive gift cards actually desire them.

In *Young v. Polo Retail, LLC*, No. No C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) (Walker, J.), Chief Judge Walker evaluated a proposed class action settlement where current and former employees of the clothing retailer Polo had sued Polo over its policy of forcing employees to buy and wear Polo clothing for work. The settlement would give class members making a claim their *pro rata* share of *both* $400,000 in cash and Polo store gift cards with a nominal value of $500,000 (there was no election between the cash and gift card). To determine if the settlement was fair, Judge Walker focused on the question of whether "former employees, who allegedly were forced to buy a great deal of unwanted Polo products, *desire* product vouchers so that they could purchase even more clothes." *Id.* at *14 (emphasis added). Having no evidence of whether class members would desire Polo vouchers, the court substituted by looking to "anecdotal" evidence of the resale value of the vouchers to conclude their economic value was 80-85% of their face value. *Id.* at *14-15.

In *Fernandez*, 2008 U.S. Dist. LEXIS 123546, Judge Morrow evaluated a settlement that provided gift cards in the amount of $67.50 for Victoria Secret stores to a class of former job applicants who did one-day job "tryouts" without pay. Judge Morrow's inquiry focused on whether the class members would desire

gift cards and would therefore use them. *Id*. at \*10. Having no direct evidence of the class members' preferences, the court credited the argument that "most class members applied for employment at Victoria's Secret because they were customers of the store" and so were *likely to desire* the gift cards and use them. *Id*. at \*38. Judge Morrow concluded that "[a]lthough the argument is somewhat speculative, the court finds it persuasive" and, when valuing the settlement's benefit to the class, found that the gift cards were worth 85% of their face value. *Id*. at \*39. *Cf. Reibstein*, 761 F. Supp. 2d at 255-56, 251 n.4 (valuing $20 Rite Aid gift cards at face value).

Here, the District Court had evidence of a type and quality that was absent in *Young* and *Fernandez*: direct evidence that every Class Member who chose the Gift Card actually desired the Gift Card. Because there was a direct election between the Gift Card and cash—unlike *Young* and *Fernandez*—we do not have to speculate about the Claimants' desires. The over 742,000 Class Members who elected to take the Gift Card necessarily desired the Gift Card, more so than the same amount in cash—or else they would have opted for the cash.

Objector Zimmerman places great emphasis on a study, described in an academic article, where the study collected data on the resale price of gift cards from an Internet auction website. Zimmerman Br. 17 (citing Jennifer Pate

Offenberg, *Markets: Gift Cards*, 21 (No. 2) J. OF ECON. PERSPECTIVES 227, 233 (Spring 2007) ("Offenberg study")).

But the Offenberg study supports Plaintiffs. The study was explicit as to its goal in examining the resale price data: to obtain "information on the value that recipients place on gift cards" as a means to gauge gift cards' economic value. *Id.* at 228. According to the author, "[t]hese data [on resale prices] provide evidence on how recipients perceive the cash value of gift cards." *Id.* at 232. The Offenberg study therefore reinforces that the lynchpin of valuing a gift card is an assessment of the value the recipient places on it. Resale price data from Internet auctions is merely a proxy which aims to get at that core proposition of value. Here, the District Court had direct evidence of the value the Class Members placed on a $12 Walmart.com Gift Card—they preferred it to the same $12 in cash.

The objectors' other grounds for their contention that the Gift Cards have a value less than their face value fare no better. Objector Frank asserts that the Settlement pushed the Class toward selecting the Gift Card because to claim cash the Class Member had to give the last four digits of his or her Social Security Number and mail the claim form, while the Gift Card could be claimed by either mail or email. Frank Br. 18-19. Frank insists it is "incongruent" for a class of Internet-savvy Netflix subscribers to have to use the U.S. mail for a claim form.

*Id.* at 19. Yet the Netflix service consisted of selecting a DVD online, followed by receipt and return of the DVD through the U.S. mail. For the Class of Netflix subscribers, using a combination of the Internet and U.S. mail was second nature. In any case, as Frank points out, a great many Class Members who could have claimed the Gift Card by email instead *chose* to use the U.S. mail to send in their claim form. Frank Br. 29 (22% of those selecting the Gift Card—over 160,000 Claimants—used U.S. mail to send in the claim form) (citing ER 147-48). Use of the U.S. mail system was not an impediment to claiming cash or the Gift Card.

Frank is incorrect on the provision of Social Security numbers to elect cash. The claim form required only the last four digits of the Social Security number. (ER 318.)

Finally, Frank contends that the District Court committed error by failing to consider "other restrictions" that could negatively affect the use of the Gift Cards, asking "will the shipping, registration, or return policies of Walmart.com negatively affect redemption?" Frank Br. 22-23. This question, however, could be asked equally of anyone receiving cash who might shop at Walmart.com or another retailer's website. The District Court did not have to undertake that investigation to value the Settlement.

\* \* \*

The District Court had ample basis on which to determine that the actual value of the Settlement is $27,250,000. The ruling that the Settlement is fair, reasonable and adequate should be affirmed.

## III.  CONTROLLING LAW HOLDS THAT A PERCENTAGE ATTORNEYS' FEE AWARD MUST BE BASED ON THE ENTIRE COMMON FUND

In a contingency-fee class action that results in the creation of a common fund, an attorneys' fee award calculated as a percentage-of-the-fund is based on the entire fund. *Williams*, 129 F.3d 1026. The purpose is to avoid the "unjust enrichment of those who benefit from the fund that is created, protected, or increased by the litigation and who otherwise would bear none of the litigation costs." *Bluetooth Headset*, 654 F.3d at 941 (citation omitted) (internal quotation marks omitted). The District Court's award of $6,812,500 in attorneys' fees here represents 25% of the $27.25 million fund, and is less than one-third of Class Counsel's hourly fees for work on behalf of the Class.

Objectors Frank, Kling Cox and Cope/Bandas contend that the 25% attorneys' fee awarded by the District Court is unreasonable. Frank claims that the 25% benchmark fee must be calculated against the settlement fund net of notice and administration costs and litigation expenses. Frank Br. 25-32. Otherwise, Frank asserts, any 25% fee award will be disproportionate to the benefit actually received by the Class. In addition, Frank erroneously contends that the attorney

fee award is over $8.5 million, a figure arrived at by adding the unreimbursed expenses of $1.7 million on top of the fee award. Frank incorrectly argues that the District Court therefore awarded Class Counsel 31% of the settlement fund as "attorneys' fees."

The District Court correctly assessed the 25% fee award against the entire common fund. It hewed to controlling law when it held that the $4.5 million from the settlement fund that paid for the extensive notice to the Class and the administration of the claims are monies that "inure to the benefit of the Class" and so are properly included in the total fund for purposes of calculating the attorneys' fee award. (ER 118.) Frank's unsupported contention that notice and claims administration efforts do not benefit the Class flies in the face of established law. *See Staton v. Boeing Co.*, 327 F.3d 938, 974-75 (9th Cir. 2003) (holding notice costs are "a benefit to the class" that are included in valuation of settlement fund); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011) ("[C]ourts base the fee award on the entire settlement fund as that package is the benefit to the class. This amount includes notice and administration costs and separately paid attorneys' fees and costs."), *aff'd*, 473 Fed. Appx. 716 (9th Cir. 2012); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993) (holding that expenses of notice and claims administration, especially the cost of distributing awards, "inures to the benefit of the class").

Frank makes a similar argument with regard to the litigation costs advanced by Class Counsel, claiming they should not have been included in the total fund when calculating the fee award, and that the 25% benchmark should be inclusive of fees and costs. Frank Br. 30-32. Here, too, the argument misses the mark. Courts routinely hold that the litigation costs advanced by counsel that help create a common fund are "properly included in the settlement valuation" for the purpose of calculating the fee award. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1078 (S.D. Tex. 2012); *see also Petersen*, 2012 U.S. Dist. LEXIS 123018, at *7-8 (agreeing that the Ninth Circuit benchmark of 25% "must assess the award against the entire common fund made available to the class, rather than the actual recovery of class members").

Likewise, it would be nonsensical to combine fees and unreimbursed litigation expenses when assessing the percentage-of-the-fund attorneys' fee award. Counsel for the class advance expenses—in an antitrust case, millions of dollars—to carry the effort aimed at creating the settlement fund. The litigation expenses are a critical benefit to the class; to have their reimbursement result in a corresponding reduction in the attorneys' fee would amount to unjust enrichment for the class. Indeed, one court recently rejected the exact same argument by the same objector in a different class action, stating "I do not simply lump fees and expenses together in assessing an award." *In re New Motor Vehicles Canadian*

*Export Antitrust Litig.*, 842 F. Supp. 2d 346, 349 (D. Me. 2012) (overruling Frank's objection to the requested fee award). Ironically, in *New Motor Vehicles*, when his own contribution was being valued, Frank took the opposite position to the one he takes now. There, Frank requested payment from the settlement fund in the form of a request for attorneys' fees *separate* from his request for reimbursement of litigation expenses. *Id.* at 351.

The final attack on the reasonableness of the District Court's fee award is from Objectors Cope/Bandas, who erroneously claim that a court employing the percentage-of-the-fund approach must receive detailed billing and time records to carry out the lodestar cross-check. Cope/Bandas Br. 10. They claim the District Court erred by accepting the summary reports of lodestar for the lead law firms for the Class. (ER 118-19.) To the contrary, it is well-established that a court carrying out a lodestar cross-check can assess the reasonableness of the percentage award using "approximate" lodestar. *Fernandez,* 2008 U.S. Dist. LEXIS 123546, at *14 (explaining the lodestar cross-check "need not be as exhaustive as a pure lodestar calculation" and "'can be performed with less exhaustive cataloging and review of counsel's hours.'") (quoting *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269, at *15 (N.D. Cal. Mar. 28, 2007)). The court made no error, especially as it found Class Counsel's lodestar submission shows it is "more than three times as much as" the amount of the 25% benchmark. (ER 119.)

## IV.  THE COURT-APPROVED NOTICE WAS ADEQUATE

Notice provided under Rule 23(e) must "'generally describe [] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Lane,* 2012 U.S. App. LEXIS 19767, at *31 (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).  It does not require "detailed analysis".  *Id*. Objectors Sullivan and Cope/Bandas contend various aspects of the court-approved notice (ER 311-13) were inadequate and argue that remand is necessary so the Class can be re-noticed.

Objectors Cope/Bandas assert the notice was inadequate because it did not specify the amount each Approved Claim would be worth. Cope/Bandas Br. 5. However, it is neither necessary nor possible for a notice to inform class members what the value of their claim will be if they participate in a settlement where individual recovery is dependent on the number and nature of claims actually submitted.  *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002) ("The notice did not need to include details such as how much each class member might receive from the settlement (a speculative amount at that stage) . . . ."), *aff'd*, 391 F.3d 516 (3d Cir. 2004).

Cope/Bandas also assert the notice failed to adequately inform the Class of what the amount of the attorneys' fee request would be.  Cope/Bandas Br. 5.  To

the contrary, the notice explicitly stated that Class Counsel would seek an award of fees up to 25% of the fund.  (ER 311-13.)

Objector Sullivan contends the notice was inadequate in several respects. First, he claims the notice did not permit an informed opt-out decision in light of the development, after notice was disseminated, that saw Netflix prevail on summary judgment.  He claims the notice stated that the Wal-Mart settlement is a "partial settlement" and that Plaintiffs would press on in the case against Netflix for further recovery.  When summary judgment was granted after notice was disseminated, Sullivan claims that this event rendered the already-disseminated notice confusing and defective.  Accordingly, Sullivan contends, the funds available to the Class should have been diminished by re-disseminating notice.

He must concede, however, that the notice directed Class Members to the claims website for updates on the settlement and updates on the continuing litigation against Netflix.  (ER 311-13.)  When Netflix won summary judgment after notice had been disseminated to the Settlement Class, Class Counsel obtained an order from the District Court causing notice to be revised to include information about the grant of summary judgment, updating the settlement website and modifying certain yet-to-be-mailed direct mail notices accordingly.  (Dkt. Nos. 546, 548; ER 104-05.)   The Class continues to pursue the case against Netflix (currently on appeal).  In the final analysis, Class Members had all the information

needed to make an informed decision on opting out of the Wal-Mart Settlement Class in the originally-disseminated notice, despite the subsequent judgment for Netflix. The additional notice to the Class undertaken with court approval after the summary judgment event cured any gap in information that existed.

Sullivan also contends the notice was inadequate on the grounds it was a "dual notice" containing a notice of pendency of the litigation class as well as notice of the Settlement, causing confusion. Sullivan Br. 33. This objection is meritless. Sullivan does not explain how serial notices, which would also waste class resources, would be any less confusing than a single notice.

Finally, Sullivan claims the dissemination of notice did not give the Class an adequate opportunity to review and object to the petition for attorneys' fees, thereby running afoul of the holding in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). Sullivan Br. 39-42. The District Court must ensure "that the class has an adequate opportunity to review and object to its counsel's fee motion". *Mercury Interactive*, 618 F.3d at 995. Here, the District Court set a schedule whereby the deadline to object or opt out of the Settlement was set fifteen days *after* to the date on which Class Counsel was to make their motion for an award of attorneys' fees and reimbursement of expenses, and the notice reflected the schedule. (SER 24.) This gave the Class notice of exactly what Class Counsel

were requesting for awards of fees and expenses, well before the deadline to object or opt out. It is exactly what *Mercury Interactive* requires.

## V. NONE OF THE OBJECTIONS CONCERNING THE FAIRNESS OF THE SETTLEMENT HAVE ANY MERIT

The District Court did not err in overruling the following objections which attacked the fairness of the Settlement.

### A. There Is No Reverter to Wal-Mart

Objector Klinge Cox erroneously asserts that the Settlement Agreement provides for a reverter to Wal-Mart. It does not, as the District Court properly found. (ER 113.)

Paragraph 11.1.1 provides that, only "[i]n the event that the Settlement Effective Date does not occur" the money that Wal-Mart has already funded for notice and claims administration will be refunded to Wal-Mart if there are any "amounts not used" by the claims administrator. In other words, Wal-Mart would get any unused funds it already paid for notice and claims if and only if the Settlement is not ultimately approved.

Paragraph 11.1.4 is not a reverter either. That provision merely states that "[i]n the event that Wal-Mart has transferred monies in excess of the amount needed" to pay out claims, attorneys' fees and expenses, notice and administration costs and incentive awards, Wal-Mart is entitled to a return of excess payments into the fund.

**B.     The Incentive Awards to Class Representatives Were Fair and Reasonable**

Klinge Cox contends $5,000 incentive awards for nine Settlement Class Representatives are excessive.  Kling Cox Br. 23.  On the contrary, the District Court correctly found that the record supports the proposed awards.  (ER 117.) The named plaintiffs worked with counsel, prepared for and then gave deposition testimony, produced documents and information essential to fulfilling discovery obligations, and stayed abreast on critical aspects of the litigation.  *Id.*  The $5,000 amount is in line with awards for analogous participation in class litigation.  *See Staton*, 327 F.3d at 976-77 (finding incentive awards between $2,000 and $25,000 reasonable depending on participation in litigation).  Moreover, the total in requested incentive awards is modest in relation to the $27.25 million recovered from Wal-Mart.  The District Court did not err in granting the incentive awards.

**C.     Potential Fees for Counsel in a Parallel State Action Also Resolved by the Settlement Would Come from Class Counsel's Fee Award**

Objectors Cope/Bandas object to the Settlement to the extent it permits California State Action counsel to win an award of attorneys' fees from anything other than the award of fees to Class Counsel, for that would unfairly diminish the value of the benefit to the Class.  The objection was overruled on the grounds that the Settlement Agreement at ¶ 13.2 does not permit what the objectors complain of.  (ER 91-92.)   Rather, ¶ 13.2 contemplates that if California State Action

counsel is awarded any fee, it will come from the "Cash Component" and not from the component earmarked for distribution to Claimants.

### D. The Fact that There Is an Opt-Out Provision in the Settlement Is Not Confidential but the Threshold Was Properly Confidential

In an argument not raised below, Objector Kling Cox contends the Settlement is rendered unfair by the existence of a "confidential" opt-out provision in the Settlement Agreement. Kling Cox Br. 25 (citing ER 278 ¶ 9.4). The Settlement does indeed provide that "Wal-Mart, at its sole discretion, has the right to terminate this Settlement pursuant to the terms of the confidential Supplemental Agreement Regarding Opt Outs." (ER 278 ¶ 9.4.)

Class actions under Rule 23 afford settlement class members the opportunity to opt out of the settlement, and not be bound by the judgment and release of claims. While some opt outs are expected and do not generally disturb the bargain the settling defendant has made (payment of a benefit to the class in exchange for a class-wide release of claims), a vast number of opt outs would frustrate the purpose of the settlement contract by depriving defendant the promise of peace and delivering instead a threat of continued litigation of the same claims. As a result, typically class action settlements include a confidential opt-out provision with the agreed-upon level of opt outs it would take to give the settling defendant the right to terminate the settlement. The fact of the existence of the opt out threshold is

included in the Settlement.  But it is common not to publicize the opt out threshold lest outside forces use it as a target to raise opt outs and scuttle the settlement.

The objector waived this argument by not raising it below, when plainly it could have been raised and the District Court could have ruled on the objection. *Mercury Interactive*, 618 F.3d at 992 ("[A]n issue will generally be deemed waived on appeal if the argument was not 'raised sufficiently for the trial court to rule on it.'") (quoting *Whittaker Corp. v. Execuair Sales Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) (internal quotation marks omitted)).

\*  \*  \*

The District Court did not err when it "didn't find one objection [ ] sufficient or – singular or in the aggregate – to preclude me from approving this settlement."  (ER 112.)  The objections concerning the fairness of the Settlement lacked merit and the District Court was well within its discretion to overrule them.

///

///

///

## CONCLUSION

The District Court's order approving the $27.25 million Wal-Mart Settlement as fair, reasonable and adequate should be affirmed. This Court should also affirm the District Court's order approving an award of attorneys' fees in the amount of $6,812,500, unreimbursed expenses in the amount of $1,700,000, and class representative incentive awards in the total amount of $45,000.

Dated: October 9, 2012          Respectfully submitted,

Robert G. Abrams
Gregory L. Baker
Gilbert Keteltas
Carey S. Busen
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Ave., NW
Washington, DC 20036
Telephone: (202) 861-1699
Facsimile: (202) 861-1783
Email: rabrams@bakerlaw.com
         gbaker@bakerlaw.com
         gketetlas@bakerlaw.com
         cbusen@bakerlaw.com

*Lead Counsel and Member of the Steering Committee for Plaintiffs in MDL No. 2029*

**BERMAN DEVALERIO**


By:   /s/ Todd A. Seaver
        Todd A. Seaver (271067)

Joseph J. Tabacco, Jr. (75484)
Christopher T. Heffelfinger (118058)
One California Street, Suite 900
San Francisco, CA 94111
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6382
Email: jtabacco@bermandevalerio.com
        cheffelfinger@bermandevalerio.com
        tseaver@bermandevalerio.com

Guido Saveri (22349)
Lisa Saveri (112043)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA  94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email:  guido@saveri.com
        lisa@saveri.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
**SPECTOR ROSEMAN KODROFF
  & WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
Email:  espector@srkw-law.com
        bcaldes@srkw-law.com
        jjagher@srkw-law.com

H. Laddie Montague, Jr.
Merrill G. Davidoff
David F. Sorensen
Sarah R. Schalman-Bergen
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3010
Facsimile: (215) 875-4604
Email:  hlmontague@bm.net
        mdavidoff@bm.net
        dsorensen@bm.net
        sschalman-bergen@bm.net

*Members of the Steering Committee for Plaintiffs in MDL No.* 2029

## STATEMENT OF RELATED PARTES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiffs-Appellants-Cross Appellees certify, through the undersigned counsel that the following related cases are pending before this Court:

*Andrea Resnick, et al. v. Edmund F. Bandas*, No. 12-15957, *Andrea Resnick, et al. v. Maria Cope*, No. 12-15996, *Andrea Resnick, et al. v. Tracey Klinge Cox*, No. 12-16038, *Andrea Resnick v. John Sullivan*, No. 12-16010 and *Andrea Resnick, et al. v. Jon M. Zimmerman*, No. 12-15889 have been consolidated with *Andrea Resnick, et al. v. Theodore H. Frank*, No. 12-15705 into this action and are appeals filed by objectors to the Court's Final Order and Judgment Approving Wal-Mart Settlement Awarding Attorneys' Fees.

*Andrea Resnick, et al. v. Netflix, Inc.*, No. 11-18034 is the plaintiffs' appeal of the district court's order granting summary judgment for Netflix. *Andrea Resnick, et al. v. Netflix, Inc.*, No. No. 12-16160 and *Andrea Resnick, et al. v. Netflix, Inc.*, 12-16183 are a collateral appeal by the plaintiffs and a collateral cross-appeal by defendant Netflix to the district court's award of costs.

Dated:  October 11, 2012                    **BERMAN DEVALERIO**


                                            By:   /s/ Todd A. Seaver
                                                    Todd A. Seaver (271067)

                                            Joseph J. Tabacco, Jr. (75484)
                                            Christopher T. Heffelfinger (118058)
                                            One California Street, Suite 900
                                            San Francisco, CA 94111
                                            Telephone:  (415) 433-3200
                                            Facsimile:  (415) 433-6382
                                            Email: jtabacco@bermandevalerio.com
                                                    cheffelfinger@bermandevalerio.com
                                                    tseaver@bermandevalerio.com

                                            *Member of the Steering Committee for*
                                            *Plaintiffs in MDL No. 2029*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached Answering Brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The Brief is 9,791 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated:  October 9, 2012                    BERMAN DEVALERIO

By:   /s/ Todd A. Seaver
        Todd A. Seaver (271067)

Joseph J. Tabacco, Jr. (75484)
Christopher T. Heffelfinger (118058)
One California Street, Suite 900
San Francisco, CA 94111
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6382
Email: jtabacco@bermandevalerio.com
        cheffelfinger@bermandevalerio.com
        tseaver@bermandevalerio.com

*Member of the Steering Committee for*
*Plaintiffs in MDL No. 2029*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 9, 2012.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the Answering Brief by First-Class Mail, postage prepaid to the following non-CM/ECF participants:

Kathryn Parsons Hoek
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6039

Genevieve Vose
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, WA 98101

Mark Lavery
**THE LAVERY LAW FIRM**
733 S. Lee, Suite 150
Des Plaines, IL 60016

I further certify that true and correct copies of the Answering Brief, Addendum and Supplemental Excerpts of Record were mailed by First-Class Mail, postage prepaid to the following:

**SEE ATTACHED SERVICE LIST**

Leslie R. Cuesta

**SERVICE LIST**

Joseph Darrell Palmer
**LAW OFFICES OF DARRELL PALMER**
603 N. Highway 101, Suite A
Solana Beach, CA 92075

*Attorneys for Objector-Appellant Maria Cope*

Christopher Andres Bandas
**BANDAS LAW FIRM, P.C.**
500 N. Shoreline, Ste. 1020
Corpus Christi, TX 78471

*Attorney for Objector-Appellant Edmund Banda*

Gary W. Sibley
2602 McKinney Ave, Suite 210
Dallas, TX 75204

*Attorney for Objector-Appellant Tracey Klinge Cox*

Theodore H. Frank
**CENTER FOR CLASS ACTION FAIRNESS LLC**
1718 M Street NW, No. 236
Washington, D.C. 20036

*In pro per*

Christopher V. Langone
207 Texas Lane
Ithaca, NY 14850
Of Counsel, Grenville Pridham

*Attorney for Objector-Appellant John Sullivan*

Joshua R. Furman
**JOSHUA R. FURMAN LAW CORP.**
10940 Wilshire Boulevard, 18th Floor
Los Angeles, CA 90024

*Attorney for Objector-Appellant Jon M. Zimmerman*

Jonathan M. Jacobson
David H. Reichenberg
Tiffany L. Lee
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019

*Attorneys for Defendant-Appellee Netflix, Inc.*

Paula W. Render
**JONES DAY**
Suite 3500
77 West Wacker
Chicago, IL 60601-1692

*Attorney for Defendant-Appellee Wal-Mart*